I am authorized to state that Justice Doolin joins in this dissent.

STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

**W. Wayne MOSS, Respondent.**

**S.C.B.D. No. 2605.**

Supreme Court of Oklahoma.

May 2, 1978.

John Amick, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

R. Keith Jennings, Jennings, Robinson & Jennings, Lawton, for respondent.

WILLIAMS, Justice:

Involved here is the matter of the extent to which respondent attorney should be disciplined for having charged a clearly excessive attorney's fee.

Respondent, an attorney licensed to practice law in this jurisdiction, accepted employment from the executor nominated in a decedent's will, to represent the estate of that testator in securing admission of the will to probate and conducting a summary administration of the estate, under circumstances of decedent's executor and legatees not being able to advise the attorney as to whether decedent left any property in his estate, or the character and location of any assets of such estate, if any, and under an agreement of the attorney to serve without fee and to require the estate to pay only the court costs and publication costs if there were no assets.

The "bone of contention" that later arose between respondent on the one hand and executor and testator's legatees on the other was whether there was a further agreement at the time respondent was so employed that if respondent found any assets belonging to the estate he would be entitled to 50% thereof as a fee for serving as the estate's attorney in the respects involved. The executor told respondent there might be an account in the bank at Apache. Respondent learned (by writing four letters) that there was a deposit in testator's name in the First National Bank of Apache in the amount of $8127.66. Another $400.00 item got into the estate later.

Respondent on February 4, 1976, some three weeks after testator's death, filed a petition for probate of his will and on the same date the will was proven and admitted to probate, letters testamentary were issued, oath of executor was executed and filed, order for inventory and appointing three appraisers was made, oaths to two appraisers were administered and such oaths and waiver of appraisers' fees filed, and general inventory and appraisements prepared by respondent and filed and application for summary administration was prepared by respondent, signed by the executor and filed in the case.

The next day, February 5, 1976, a judge of the district court, pursuant to 58 O.S. Supp.1975 § 241 ordered that a summary administration of the estate be had and that a combined notice to creditors to present claims within 35 days, notice of hearing on final accounting and for determination of heirship, distribution and discharge at 4:30 p. m. on March 19th, 1976 be given. Order and notice accordingly were prepared and notice was published for two weeks in a Comanche County newspaper.

Respondent prepared a final account for executor to sign reflecting the described

bank deposit and the additional $400.00 (death benefits payment to the estate made by the Veterans Administration). Testator had no outstanding accounts payable after executor paid the funeral expenses.

Respondent drew and on March 19, 1978 got signed by a judge of the district court an order of that date settling final account, determining heirs and purportedly closing the estate and discharging the administrator. That order recited that an attorney's fee had not been paid. It further ordered, however, that the bank in Apache transfer testator's deposit to the office of the Court Clerk of Comanche County

"to be distributed by said Court Clerk to the use and benefit of said heirs and attorney of record, W. Wayne Moss, and the same is therefore ordered adjudged and decreed by the Court."

One week later, respondent directed the clerk to pay each of the two legatees named in decedent's will the sum of $2,083.00 and to pay himself a $4,000.00 attorney fee which was done. Respondent kept these cash vouchers in his office some 2½ months. Meanwhile he had told one of the two legatees on March 19th his half of the estate would be $3400.00 or $3500.00 and had told the husband of the other legatee, when Mrs. Ewing and he were in respondent's office on other business, that her half would be over $3,000.00.

Mrs. Ewing went to respondent's office on June 10, 1976 and received her $2,083.00 court clerk's cash voucher and left without talking to respondent concerning the amount. She testified she "was floored." She telephoned the executor, her brother, who exclaimed that "half" of the estate was "too much" (for a fee).

Executor and his sister and their cousin, the other legatee, went to respondent's office the next day and respondent told them there was a mistake, executor agreed, respondent inquired if the family would be willing to pay a $2000.00 fee, learned that they would not, inquired what they would pay. The family members had inquired of other lawyers and friends with business experience and learned that a proper fee in a probate matter would be from 3% to 5% to 10%. Executor thought it was too much but agreed to pay 8%.

Executor inquired when the legatees would get their money and respondent told them, "Monday week." Executor waited until past that time, called respondent's office and told his secretary he would have 1½ hours to get the money to him or complaint would be filed with the Oklahoma Bar Association. The money was not forthcoming, executor complained in writing to the Bar Association, the matter was investigated, respondent was advised of the complaint, responded by letter, formal complaint was filed, trial authority was designated by the Chief Justice, hearing date was set, notice to respondent was given, hearing was conducted and testimony in support of the complaint and in defense to it was adduced.

Among other instruments included in the probate file and introduced in evidence in the disciplinary hearing were the estate tax return prepared by respondent, dated February 5, 1976 and signed by both respondent and executor listing among expenses of administration a $4,000 fee for respondent and a final account filed March 19, 1976, signed by the executor and reciting that an attorney's fee had not been paid.

The evidence in support of the complaint was as has already been set forth and of further effect that the executor did not agree to a fee in the amount or percentage of 50% or any other amount or percentage as claimed and testified to by respondent; that executor had had complete confidence in and relied upon respondent and did not so much as read his uncle's will or the tax return he had signed on February 5, 1976, listing respondent's fee as being $4,000.00 or any of the other instruments he had signed and caused to be filed in the estate case. He testified he did not know there was a statement in the March 19, 1976 final account he had signed that the attorney fees had not been paid and had no knowledge that respondent was charging or attempting to charge such a fee until his sister legatee called him, on June 10, 1976.

Introduced into evidence in the disciplinary hearing among other instruments from the estate file was a second order dated March 19, 1976 approving final account, determining heirs, closing the estate and discharging executor but not filed until September 1, 1976. It allowed the respondent a fee and reimbursement of court costs and publication fees in the amount of $789.21.

In the disciplinary hearing, a trial judge and several members of respondent's local Bar testified in his behalf that he had a previous good reputation in the community where he had resided for the several years last past both for truth and veracity and generally. They couldn't conceive of an attorney taking a probate case and setting a definite fee without knowing something of what the assets were. They did not consider this to be the type of case warranting setting a fee at 50% of the assets. Rather, the testimony was that a fee should not have been more than 5% or 10% or possibly 15%. One witness thought if the attorney did the executor's work of ferreting out the assets possibly charging 50% would be warranted. One thought that possibly a $1,000.00 fee would be proper.

The trial authority found there was no agreement between executor and respondent that executor would pay respondent a fee in the amount of 50% of the value of the assets of decedent's estate. He found respondent guilty of having charged testator's estate a clearly excessive fee and recommended that respondent be reprimanded and cautioned concerning his future professional conduct.

This Court has original and exclusive jurisdiction to discipline members of the Oklahoma Bar Association. Art. IX, 5 O.S.1971, Chap. 1, App. 1, Rules Creating and Controlling the Oklahoma Bar Association amended effective August 7, 1971 (Rules) and a Code of Professional Responsibility, 5 O.S.1971 App. 3, (Code) adopted pursuant to Rules, portions of which Rules and Code, respectively, are deemed applicable here.

"Discipline by the Court shall be disbarment, suspension of a respondent from the practice of law until the further order of the Court, public censure or private reprimand . . ."

Disciplinary rule of the Code (DR) 2–106, Fees for Legal Services, provides in pertinent part

"(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered . . ."

Respondent suggests the complaint referring to attorney's fee he sought to charge should be dismissed as failing to allege the respondent's conduct in trying to collect the proposed fee was fraudulent or extortionate as required by Rules, Art. IX, § 6.

That rule in pertinent part is of provision that

"*Controversies as to the amount of fees shall not be considered a basis for charges in a disciplinary proceeding unless it is made to appear that the amount demanded as fees is extortionate or fraudulent.*" (Emphasis supplied.)

As has been shown, the effect of complainant's evidence was that fee respondent charged or attempted to charge the estate was clearly excessive. Rule 6 requires that it be extortionate or fraudulent. Respondent argues it was not.

Webster's Third New International Dictionary defines excessive as exceeding the usual, proper or normal or very large, great or numerous: greater than usual.

That dictionary defines extortionate as characterized by extortion and that noun in turn is defined as the act or practice of extorting especially money or other property; . . . a gross overcharge; . . . exorbitant . . . (as of fees). The same dictionary defines exorbitant as . . excessive; of a price, charge or rate: grossly exceeding normal, customary, fair and just limits (as of rents) (as of profits). Fraudulent is defined in the same work as

belonging to or characterized by or founded on fraud. Fraud in turn is so defined as, among others, an act of trickery or *deceit*, . . . an intentional misrepresentation, *concealment,* or *nondisclosure* for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right; . . (Emphasis added).

Paraphrasing our statute, the concealment of facts by one under a duty to disclose them for the purpose of depriving another of that which is rightfully his, is by definition a deceitful act. 76 O.S.1971 § 3(3).

The acts of respondent attorney without prior consent of his client, in having the bank transfer testator's deposit to the office of the clerk of the court conducting the proceeding for probate of the will and summary administration of decedent's estate and having the clerk, without the knowledge of the trial court or the executor or legatees, pay to himself, the attorney, a $4000.00 fee, even though later relinquishing the $4000.00 voucher back to the estate and then reducing his fee to 8% of the assets of the estate, under the facts of this case constitutes the charging or an attempt to charge a clearly excessive fee within the meaning of DR 2–106(A) and (B) of the Disciplinary Rules of this Court and Section 6 of Rule IX of the Rules Creating and Controlling the Oklahoma Bar Association, warranting the imposition of discipline.

We determine both that the complaint and the evidence of guilt were sufficient. The finding by the Trial Authority that respondent has charged the estate of Mr. Price, deceased a clearly excessive attorney's fee within the meaning of section 6 of Article IX of the Rules Creating and Controlling the Oklahoma Bar Association has been established by a preponderance of the evidence pursuant to Art. X § 14 of such Rules, is approved.

Argument of effect that respondent was warranted in charging 50% as a "contingent fee" is deemed inapplicable since this was a probate matter involving an asset of the estate as opposed to a suit to garner a fund for the estate that was being resisted by one trying to retain it for himself.

The Court determines that respondent should be and he is ordered suspended from the practice of law for a period of thirty (30) days, effective upon this opinion becoming final.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, IRWIN, BERRY, BARNES and SIMMS, JJ., concur.

DOOLIN, J., concurs in result.