IN THE MATTER OF LAURENCE A. HECKER, AN ATTORNEY AT LAW.

Argued September 15, 1987—Decided March 18, 1988.

*Thomas J. McCormick,* Deputy Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Francis X. Crahay* argued the cause for respondent (*Tompkins, McGuire & Wachenfeld,* attorneys).

PER CURIAM.

This case arises from a report and recommendation of the Disciplinary Review Board (DRB) that respondent be suspended from the practice of law for a period of two years. The DRB's report follows the findings of a Special Master appointed to make a factual record with respect to the charges of ethical misconduct that had been brought against respondent. We find, as did both previous bodies, that the record demonstrates by the required standard of clear and convincing evidence that certain of these charges have been sustained. For the reasons stated in our opinion, however, we believe that the appropriate sanction is a suspension for six months.

I

This case primarily concerns the respondent's legal representation of Dover Township (Toms River) during the early 1970s. Admitted to the bar in 1965, respondent had practiced primarily in the northern Monmouth County town of Keyport. Following his appointment as Dover Township Attorney in January of 1971, respondent concentrated his practice at an office he opened in Toms River: he undertook, as a single practitioner, to represent the developing municipality. During the next few years, respondent's fees came into question; he was replaced as municipal attorney; the municipality sought to recover the excess fees; and this disciplinary proceeding resulted.

II

We shall preliminarily address respondent's contention that reliance by the Office of Attorney Ethics on the record of the

civil law suit denied him procedural fairness in the conduct of these disciplinary proceedings. In that matter, captioned *Dover Township v. Hecker,* a verdict of $110,000 was recovered from the respondent following an extended trial in 1978. The judgment on the jury verdict was entered on May 8, 1978, and was affirmed in an unreported 1979 Appellate Division opinion. The disciplinary hearing commenced on December 7, 1984.

■ Initially, respondent notes the difference between the preponderance standard of proof required to sustain a civil judgment, whether premised on tort law of civil fraud or on contract law, and the standard of clear and convincing proof required in a disciplinary proceeding. Because the Master's resolution of the issues surrounding the dispute over respondent's fees did not rely on the jury verdict to establish anything other than the amount of fees overcharged, and because the Master's conclusions on ethical misconduct were based on respondent's own statements, we find that there is no inherent due process violation. *Cf. Berke v. Chattanooga Bar Ass'n,* 58 *Tenn.App.* 636, 436 *S.W.*2d 296, 303 (1968) (prior civil proceeding relevant to overcharges and other matters will be conclusive on issues raised, i.e., fact of overcharges).

■ In addition, respondent notes the procedural unfairness of the presenter's introducing into evidence before the Special Master the complete trial transcripts without following the Master's instructions to indicate those sections on which the presenter would rely at the hearing. Respondent first learned of this tactic the day before the hearing began.

Because we believe that the Special Master was careful to safeguard respondent's rights, and because the Master's findings of fact and conclusions with respect to the civil litigation are premised only on what the judgment itself established and on the respondent's admitted explanations therefor, we find no such lack of fundamental fairness as would lead us to dismiss the charges. *Cf. In re Skevin,* 104 *N.J.* 476, 487 (1986), *cert. denied sub nom. Skevin v. Supreme Court of New Jersey,* ——

*U.S.* ——, 107 *S.Ct.* 1954, 95 *L.Ed.*2d 526 (1987) (where public interest is involved, extrajudicial statements by ethics complainant do not themselves mandate dismissal of charges).

## III

The substance of the charges against respondent may be reduced to four basic contentions:

### A

#### *The $110,000 fee overcharge verdict.*

As noted, respondent acted as Township Attorney for Dover between January 1971 and February 1974. The total amount billed during this period was $328,732. In November of 1975, the Township sued respondent to recover for overcharges: in May 1978, it recovered a civil judgment against respondent for $110,000. The ethics complaint asserted that $45,000 of this $110,000 verdict represented a jury finding of fraud that was conclusively binding in the disciplinary proceedings. Specifically, the respondent had been charged at trial with double-billing; overcharging; charging for unnecessary services, such as review of Board minutes; charging for services of non-lawyers; and failing to give credit for retainers and other payments on account. A subsidiary issue to these allegations was the so-called "bond issue." The complaint charged that in connection with a bond issue for a new Municipal Court and Police Center Building, respondent had duplicated the services of New York bond counsel by retyping, and charging for, work done by that firm.

### B

#### *The concealment of assets after the verdict.*

Both during the trial and after the judgment of $110,000 was entered against the respondent, he transferred various assets to family, friends, business associates, and others. The com-

plaint contends that these transactions were made with the intent to hinder and delay Dover Township's recovery of its judgment. Respondent denied any intent to defraud, but asserted that he did only what any other judgment debtor may lawfully do in the face of a judgment with regard to an antecedent debt or with respect to other business arrangements. The respondent was also charged with willful disregard of a discovery order in connection with supplementary proceedings in aid of execution.

## C

### *The conduct of unauthorized, frivolous or harassing litigation and retention of files.*

It was further alleged that respondent, on behalf of a Township Committee member, filed an unauthorized counterclaim against a citizen litigant; that he harassed Township officials by bringing a 42 *U.S.C.* § 1983 action after the $110,000 verdict was entered; that he misused the legal process to avoid payment of the judgment by appealing a *capias* writ of arrest after a consent order was entered; that he otherwise violated conditions of his release following the *capias* arrest; that for the improper purpose of regaining his lost position as Township Attorney, he sued Township Committee members and then politicized the legal process by releasing the complaint to the press before it was filed; and that even after his representation of the Township was terminated, he refused to return the Township's legal files and records.

## D

### *The conflicts of interest and misconduct charges.*

These charges centered around allegations that the Dover Township Code required financial disclosure of all possible conflicts by its officials and that respondent had failed to disclose his interest in certain land development ventures; that

he had delayed transfer of deeds to such ventures to the detriment of the Township's tax revenues; that he had paid certain hotel and restaurant expenses of a Township Committee member, thus providing that member with an "illegal bonus" for having the Township pay respondent's legal bills; and, finally, that he had disclosed confidences of the Township by furnishing to a litigant an affidavit filed in a civil matter.

## IV

After several hearing dates and consideration of the multiple exhibits presented to him, the Special Master made essentially these findings:

### A

### *Fee Overcharges.*

The overcharges of $110,000 were not the product of mere neglect or mistake, as respondent contended, but instead were evidence that "[r]espondent was engaged in a pattern of submitting bills which contained misrepresentations as to the work done and which failed to give appropriate credit for payment previously made." The Master found this conduct to be unethical and to reflect adversely on respondent's fitness to practice law because the billing practices involved misrepresentation in violation of DR 1–102(A)(1), (3), (4), and (6). He also found that the conduct violated DR 2–106(D) (lawyer shall be disciplined for fees so excessive as to be overreaching).[1] The Master premised these findings on the respondent's recognition that he had repeatedly included items that had been previously paid and that he had failed to credit the Township for retainers received.

---

[1] We refer, as did the Master, to the Disciplinary Rules, which were in force at the time of respondent's conduct. These rules have been replaced by Rules of Professional Conduct, adopted July 12, 1984, to be effective September 10, 1984. *R.* 1:14. In the areas of discipline relevant here the contents of the two sets of Rules are equivalent.

The Special Master did not premise his finding of ethical misconduct on the various other allegations, neither in the bond issue nor in the respondent's billing at his own hourly rate for the services of legal research organizations or law clerks. Reasoning that since respondent was ultimately responsible for these services and had both to check and to vouch for their reliability, the Master noted that there was some minimal basis for their submission and the question of their reasonableness did not rise to one of ethical misconduct. The Special Master also declined to find that certain other fees were exorbitant, unreasonable, or fictitious. He saw too much leeway in the subjective process of evaluating the reasonableness of a particular attorney's fee in a specific matter to find respondent's billing of the Township unethical in comparison with the hourly fees of other attorneys. The Master also held that the lump sum verdict of $45,000 predicated on civil fraud did not enable him to find, in the absence of other proof, which of several instances of overcharges formed the basis of the verdict. He did not make a finding of fraud against respondent.

## B

*Concealment of assets.*

The Master found that during the trial and after the judgment against him, respondent had, among other transactions, opened a bank account in Maryland; given a mortgage on office property; secured his other assets in favor of his defense counsel; turned his office equipment and furniture over to his professional corporation; mortgaged his Keyport furnishings to his parents; conveyed his half interest in the Keyport office building to his secretary and her husband with a leaseback; executed a second mortgage to his parents on a Toms River residence that he owned; and conveyed that residence subsequently to his girl friend. The Master concluded that respondent "engaged in a course of conduct designed to avoid the lawful process of the judicial system," stating that "he has thus

violated" DRs 1–102(A)(1), (4), (5), and (6). On the related
question of the supplementary proceeding, after the $110,000
verdict, Dover sought additional discovery in aid of execution
on its judgment. The Special Master found respondent's failure
to appear at a deposition to be an unethical avoidance of his
duty to respond to process, and a violation of DR 1–102(A)(5)
and (6).

## C

### *The frivolous or harassing litigation.*

On these issues, the Special Master found no unethical con-
duct in several of the matters outlined, finding an at least
colorable basis in law for advancing certain of the positions
taken by respondent. In other matters, however, he found
respondent's conduct improper:

1. *The Westmont Shores cases:* In this matter the respon-
dent painted himself into the corner of impropriety by advising
the Township that success on an appeal was highly unlikely,
but that that situation would be ameliorated by a two-month
delay that would give the Township tax revenues of $30,000,
"more than [paying] for the legal fees involved."

2. *Hecker v. Zaun:* This was respondent's suit against
Township officials, for the purpose of harassing them into
forcing his reappointment. Although the complaint was filed
on November 4, 1974, at or about the time of an election
campaign, respondent had previously advised the newspapers
of his allegations; their stories were printed on November 1,
1974. The complaint had no discernible merit and was dis-
missed summarily. Subsequent to the filing of the complaint,
respondent made an improper phone call to one of the named
defendants suggesting that if respondent were reappointed as
Township Attorney, he would drop his suit. The Special Master
found that respondent had instituted the meritless suit in an
effort to force his reinstatement and that he named individual
members of the governing body in an effort to bring financial

pressure on them to reinstate him as Township Attorney. This conduct, the Master held, violated DR 1–102(A)(1), (5), and (6) (conduct prejudicial to the administration of justice and adversely reflecting on fitness to practice).

## D

*The remaining misconduct charges: conflicts of interest.*

The Master agreed that respondent should have disclosed his interests as required by the municipal code, and that his "inordinate delay in preparing a deed to his partner * * * resulted in a loss of tax revenue to the Township." The Master concluded that respondent violated DR 1–102(A)(1), DR 5–101(A) (requiring disclosure of interest that may affect representation, and client's consent) and DR 5–107(A)(2) (requiring the avoidance of influence on client's matter by one other than the client). The Master also found that respondent's "conduct in unreasonably retaining the files of his former client" was a violation of DR 1–102(A)(1), (5), and (6). Finding no clear and convincing demonstration that the hotel and restaurant bills paid by respondent were for "corrupt" purposes, the Master dismissed these allegations. Finally, the Master found no secret or privileged information in the affidavit supplied by respondent to a litigant; he thus found no violation of DR 4–101 in connection with this incident.

## V

Considering the totality of the charges, the Special Master recommended a suspension from practice for a period of one year: "The proven charges indicate a repetitive pattern of overcharging the municipality, participation in transactions in which Respondent's personal interest was in conflict with that of his client and a misuse of judicial proceedings contrary to the public interest." The DRB agreed with the basic factual findings of the Special Master, specifically concluding that respondent's "conduct during his tenure as municipal attorney, his

subsequent actions against the Township committee and committee members, his systematic encumbering, transfer and removal of all assets during and after his civil trial, his failure to appear for a deposition, his failure to file a disclosure statement and his delay in returning all legal files to the Township following his resignation demonstrate unethical conduct * * *." The DRB recommended a two-year suspension.

We agree with the Special Master and the DRB that the record clearly and convincingly displays instances of ethical misconduct. They found that respondent billed Dover Township for services not rendered; filed a meritless appeal for the purpose of delay; acquired tax sale certificates while serving as municipal attorney without filing a disclosure statement as required by the Municipal Code of Ethics; withheld files for sixteen months after he "resigned" as municipal attorney; sued township officials just before a general election to force them to rehire him; hid his assets so that the municipality could not recover on its $110,000 judgment against him based on a jury verdict "that respondent was guilty of making intentional misrepresentations and of receiving unreasonable legal fees"; and frustrated efforts to take his deposition in supplementary proceedings by flying to Las Vegas on a gambling junket.

In assessing discipline, the DRB emphasized the paramount responsibility of an attorney to act with total honesty and to avoid participating in any fraud or misrepresentation, citing *In re DiBiasi*, 102 *N.J.* 152, 154 (1986); *In re Verdiramo*, 96 *N.J.* 183, 186 (1984); *In re Gross*, 85 *N.J.* 26, 29 (1980); *In re Labendz*, 95 *N.J.* 273, 279 (1984). The first three cases cited dealt with convictions for crimes of dishonesty, and thus involved situations that pose the clearest threat to public respect for integrity in the administration of justice. The respondent in the *Labendz* case was clearly guilty of submitting a false financial statement to a federally-insured lender. Though respondent's misconduct is grave, the proofs presented here fell short of establishing that the misconduct should be equated with criminal fraud or dishonesty.

In the absence of conduct akin to misappropriation, some jurisdictions do not regard overcharges by attorneys as matters of ethical misconduct. "Controversies as to the amount of fees shall not be considered a basis for charges in a disciplinary proceeding unless it is made to appear that the amount demanded as fees is extortionate or fraudulent." *State ex rel. Oklahoma Bar Ass'n v. Moss,* 577 *P.*2d 1317, 1320 (Okla.1978); *see also In re Ahern,* 23 *Ill.*2d 69, 177 *N.E.*2d 197, 199 (Ill.1961) (attorney should not be disbarred simply because of dispute over fees). Obviously, an attorney who had misappropriated clients' funds could merit the sanction of disbarment; but, as noted, *supra* at 547, the Special Master was unable to relate the jury's $45,000 verdict to specific items of overcharge and, in the absence of other proof, did not find that respondent acted fraudulently. However, we find ethical discipline warranted even by less extreme levels of attorney overcharges.

■ DR 2–106(D) requires that "[a] lawyer shall be disciplined if he shall enter into an agreement for, charge, or collect a fee so excessive as to evidence an intent to overreach his client." As noted, the Master found that although respondent's fees may not have been extortionate or fraudulent, because of the duplications and lack of credits, the bills misrepresented the amounts due. Respondent denies any fraudulent intent to overcharge. Still, we have held that an attorney cannot deliberately design, fashion, or maintain a bookkeeping system in such a way as to confound determination of whether he has intentionally misused a client's accounts or intentionally overcharged a client. *In re Hubert Johnson,* 105 *N.J.* 249 (1987). "Respondent knew, or should have known, that the charge was excessive and cannot now use poor bookkeeping on his part to excuse himself from the consequences of his act. Even though it may be concluded that the overcharge was not intentional, yet the obligation of the lawyer is to keep his books of account in such order as not to make a careless mistake to the detriment of his client." *The Florida Bar v. Kirtz,* 445 *So.*2d 576, 576 (Fla. 1984). Hence, we agree that to the extent that respondent's

overcharges of Dover Township were, at the very least, the result of a grossly inadequate and inefficient billing system, he cannot be excused from responsibility for overbilling, duplicating, and failing to credit items in the client's account.

Similarly, although respondent's post-judgment activities may not present evidence of criminal fraud or of knowing misappropriation of clients' funds or funds of another, the conduct falls far short of what should be expected of an attorney representing a public client. We have always emphasized the special ethical duties of attorneys representing the public. In many, if not most, instances of respondent's transferring of assets, the documents were made matters of public record. These documents could not help but create the impression that his actions were taken with the intent to delay the just rendition of available assets to the satisfaction of the judgment obtained by the public entity that he had formerly represented. On this scale of values, it simply cannot be said that respondent was merely preferring one creditor to another. Even though, due to a pending appeal, the public entity's judgment was not yet conclusively final, that entity had an established claim and thus as a creditor surely deserved no less satisfaction than did respondent's business partners.

"We have frequently adverted to the principle that an attorney should avoid even the appearance of impropriety which may arise when he acts as an adversary against a former or existing client." *In re Opinion No. 415*, 81 *N.J.* 318, 323 (1979). Obviously, respondent did not invite this litigation, but he had to have recognized the special status that he bore. As Justice Schreiber noted in *In re Opinion 415, supra*, "[w]hen representation of public bodies is involved, the appearance of impropriety assumes an added dimension. Positions of public trust call for even more circumspect conduct." *Id.* at 324 (footnote omitted).

Respondent has an otherwise unblemished record. There are no past or pending ethical complaints against him. He has

satisfied the civil judgment against him and we have received letters of recommendation from his peers in municipal practice. It remains for us to decide the appropriate discipline for this unprofessional episode in his legal career.

Although relatively young at the time of these occurrences, respondent had practiced for several years with a respected member of the Monmouth County bar. Respondent should have known better in the Westmont Shores Estates matter than to counsel the prosecution of an appeal on the basis that unwarranted delay would benefit his client: his age cannot excuse him from responsibility for the improper use of judicial process. Similarly, his inexperience was no excuse for repeated overcharges of his public client.

■ We concur that respondent's conduct, taken in its entirety, reflected "a lack of awareness of the degree of professionalism expected of every member of the bar," *In re Katz,* 90 *N.J.* 272, 284 (1982), and particularly of every member of the bar engaged in public service. Hence, we would be inclined to agree with the extended suspensions recommended by the DRB or Special Master save for the circumstance that this entire matter is now almost fifteen years old, almost ten years have passed since the entry of the civil verdict, and more than eight years since the Appellate Division's affirmance. We have attempted to clear from our system of attorney discipline cases such as this that, because of complex factual and legal backgrounds, were delayed in their resolution for years on end. *See Guideline #17, Administrative Guidelines of the Office of Attorney Ethics,* effective February 15, 1984 (authorizing use of Special Masters to hear complex cases). In two recent cases we have taken into account the extended delay in the imposition of attorney discipline. *In re Stier,* 108 *N.J.* 455 (1987); *In re Kotok,* 108 *N.J.* 314 (1987). Because of the multiplicity of offenses here, however, we will not stay the imposition of a period of suspension. In light of all of the circumstances, we

believe that a suspension of six months is the appropriate discipline.

## VI

One final aspect of this case deserves mention. Although their assignment was not objected to by respondent, the Special Ethics Presenters in this matter had acted as attorneys for Dover Township in the civil litigation. Ethical proceedings, like criminal proceedings, are brought to vindicate public rather than private interests. When an attorney, either in a personal or in a representative capacity, has or has had a private interest in matters that are central to the public controversy, that attorney should not serve to represent the public interest, especially in ethical and disciplinary controversies. *See State ex rel. Koppers Co. v. International Union of Oil, Chem. and Atomic Workers,* 298 *S.E.*2d 827, 831 (1982) ("Justice is better served by avoiding appearances of impropriety and of inherent conflicts of interest, presented when a private party's counsel in a civil suit is permitted to prosecute a criminal contempt against an opposing party."); *see also Department of Health v. Roselle,* 34 *N.J.* 331, 343 (1961) (attorney for private litigant may not be appointed to prosecute criminal contempt if the appointing court "senses that unfairness may ensue"). We believe the better future course to be that where a civil litigant has a financial interest in matters that are the subject of a disciplinary complaint, that party's attorney should not be appointed to represent the interests of the public in the disciplinary proceedings.

Respondent is suspended from the practice of law for six months and until further order of the Court. He is further directed to reimburse the Ethics Financial Committee for appropriate administrative costs, including the cost of producing transcripts.

So ordered.

*For Suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

## ORDER

It is ORDERED that LAURENCE A. HECKER of TOMS RIVER, who was admitted to the bar of this State in 1965, be suspended from the practice of law for a period of six months, effective April 11, 1988, and until the further order of this Court; and it is further

ORDERED that LAURENCE A. HECKER reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that LAURENCE A. HECKER be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that LAURENCE A. HECKER comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended attorneys.