1998 OK 83

**STATE of Oklahoma, ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Joseph WEEKS, Respondent.**

**State of Oklahoma, ex rel., Oklahoma Bar Association, Complainant,**

v.

**Mark Nation, Respondent.**

**Nos. SCBD 4123, SCBD 4125.**

Supreme Court of Oklahoma.

July 14, 1998.

Rehearing Denied Sept. 8, 1998.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, For Complainant.

Joseph R. Weeks, Oklahoma City, Oklahoma, pro se.

Calvin W. Hendrickson, Oklahoma City, Oklahoma, For Respondent Nation.

PER CURIAM.

¶1 In this appeal from a bar disciplinary proceeding we are asked to decide whether respondents, attorneys for a prevailing plaintiff in a civil rights action, received an unreasonable fee in violation of Rule 1.5(a) of the Oklahoma Rules of Professional Conduct, when they collected both the full amount of the attorney fees received in settlement with the defendants pursuant to 42 U.S.C. § 1988, and the full amount of the agreed upon contingent fee from the client's recovery. Rehearing of our previous decision in SCBD 4123 is granted. Our previous opinion is withdrawn and this opinion is substituted therefor.

¶2 We agree with appellant, Oklahoma Bar Association, that respondents' dual fee arrangement at issue violated Rule 1.5(a). We find their recovery of the contingent attorney's fee was not warranted under existing federal law, and therefore they obtained money from their client's recovery which they were not entitled to receive. As discussed below, we conclude that respondent Nation should not be disciplined but that respondent Weeks should be publicly censured.

I.

¶3 The facts of this matter are substantially undisputed. In November of 1993, the client, Nathaniel Dodoo, contacted respondent Mark Nation in an effort to obtain counsel to represent him in a civil rights action based on allegations of racial discrimination. Nation had graduated from law school only one year before and because of his limited experience in this complex area, he asked respondent Joseph Weeks to help him with the case. Nation was familiar with Weeks and his good reputation in this area of the law as Weeks is a member of the faculty at the law school from which Nation had just graduated.

¶4 Weeks reviewed the relevant information and agreed to serve as co-counsel Once involved in the case, Weeks prepared the complaint and the representation agreement the parties signed, which is at issue in this proceeding. That agreement is a five page

single-spaced document which provides that respondents would retain any court awarded or negotiated fee *and* 50% of any judgment or settlement paid by defendants. The contract provides in relevant part:

"... One half (1/2) of any amounts received by Mr. Dodoo, through a court judgment or a settlement agreement between the parties to the dispute (hereafter referred to as 'the contingent amount'), shall be paid jointly to Mr. Weeks and Mr. Nation.

Mr. Weeks and Mr. Nation will undertake reasonable and necessary steps to pursue obtaining a negotiated or court ordered attorney fee if such an award of attorney fees is available under the claims on which the litigation is successful. Mr. Dodoo hereby assigns to Mr. Weeks and Mr. Nation his right to seek or obtain such an attorney fee as a prevailing party in litigation of his claims and further assigns to them his right to waive any such attorney fee.

Because of the risk involved of obtaining no judgment or settlement and the possibility of Mr. Dodoo's receipt of a nonmonetary form of relief such as reinstatement, it is understood that any negotiated or court ordered attorney fee obtained by Mr. Weeks and Mr. Nation will be retained by them in addition to the contingent amount ... and ...

In the event that a settlement or judgement is obtained that does not contain nonmonetary relief ..., Mr. Weeks and Mr. Nation will receive ... in addition to the retainer, (1) the contingent amount ... and (2) any negotiated or court awarded attorney fee."

¶ 5 After a relatively short time, respondents negotiated a settlement with defendants on plaintiff's claim in the amount $50,-000.00. At plaintiff's request, respondents agreed to reduce their contingent fee amount to 40% of the recovery. Respondents thereby retained $20,000.00 as their 40% contingent fee and they gave Mr. Dodoo $30,000.00, which was 60% of the recovery.

¶ 6 Respondents subsequently negotiated a settlement with the defendants for attorney's fees and costs pursuant to 42 U.S.C. § 1988, in the amount of $23,417.68. Respondents did not advise or consult Mr. Dodoo while they were negotiating for the attorney's fee or upon their acceptance of it. Respondents retained for themselves $43,417.68 as their fee; $23,417.68 as the statutory attorney's fee obtained in the settlement and $20,000.00, the 40% contingent fee amount, while Dodoo's recovery was but $30,-000.00.

¶ 7 According to his grievance filed with the Bar Association, Mr. Dodoo had been unable to find out from respondents the total amount of money they had collected from his case, even after the action was over. Mr. Dodoo stated he was able to find out the total amount for which the case settled only by going to the federal courthouse and checking the file. There he learned that on August 26, 1994, respondents Weeks and Nation had filed a release and satisfaction acknowledging receipt of $73,417.68 from the defendants.

## II.

¶ 8 The Oklahoma Bar Association filed complaints against respondents Weeks and Nation, licensed attorneys, alleging they violated Rules 1.2(a), 1.4, 1.5, 1.7(b), 1.15(b) and (c), and 8.4(c) of the Rules of Professional Conduct as well as Rules 1.4(b) and (d) of the Rules Governing Disciplinary Proceedings. Subsequently, the Bar Association charged respondents by amended complaint with violating Rule 1.5(a) of the Rules of Professional Conduct which provides: "A lawyer's fee shall be reasonable."[1] The Bar sought im-

1. In its entirety, the Rule provides:

"(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

position of professional discipline. The actions were made companion cases and the proceeding before the trial panel concerned both respondents. Unless otherwise indicated, references in this opinion include both respondents.

¶ 9 The character of the fee arrangement which allowed respondents to retain dual fees was the focus of the disciplinary proceeding. Respondents contend that the other charges in the original complaint were abandoned by the Bar Association, but the record does not support that position. The Bar Association presented no evidence beyond the stipulations of the parties in support of the charges of the original complaint and the amended complaint. Only respondents testified at the hearing before the trial panel. The Bar Association and the respondents entered into a stipulation of fact for submission to the Professional Responsibility Tribunal which included the following:

"On August 26, 1994, the defendants filed with the Court a Release and Satisfaction, which acknowledged receipt of $73,417.68 from the defendants. Neither Weeks or Nation consulted Dodoo while negotiating, or upon acceptance of, the $23,417.68 received for attorney fees and costs."

¶ 10 The matter was tried as a question of law on agreed and stipulated facts. The trial panel of the Professional Responsibility Tribunal recommended that no discipline be imposed and set forth the following suggestion in its findings that this Court should:

"... Interpret Rule 1.4 of the Rules Governing Disciplinary Proceeding, Rule 1.5 of the Rules of Professional Conduct, and 5 O.S.A. Section 7, with respect to a fact situation such as this. Attorneys in the future could then appropriately deal with clients knowing what is required."

¶ 11 The facts reveal that Nation played a very minimal role in representing Mr. Dodoo; he relied on Weeks, the far more experienced attorney, to guide him through the process. To Weeks' credit, he has been quite forthright in acknowledging and accepting the disproportionately larger share of responsibility for these actions.

### III.

¶ 12 This Court possesses exclusive original jurisdiction in Bar disciplinary proceedings. Rule 1.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1 App. 1–A; *State ex rel. Okl. Bar Ass'n. v. Eakin,* 1995 OK 106, 914 P.2d 644 (Okl.1995); *State ex rel. Okl. Bar Ass'n. v. Raskin,* 1982 OK 39, 642 P.2d 262 (Okl.1982). The Supreme Court's review is by de novo consideration on the entire record. Neither the parties' stipulation of fact nor the Tribunal's findings, conclusions of law nor recommendations of discipline are binding on this Court. Rule 6.15, Rules Governing Disciplinary Proceedings; *State ex rel. Okl. Bar Ass'n. v. Fagin,* 1992 OK 118, 848 P.2d 11 (Okl.1992); *State ex rel. Okl. Bar Ass'n. v. Eakin, supra.* The ultimate responsibility to impose discipline in a case before this Court is ours alone. The burden is on the Bar Association as the party seeking re-examination of the record to show why the trial panel's findings should not be accepted. *Raskin, supra.* The Bar meets its burden here.

¶ 13 The positions of the parties on this appeal can be simply stated. The Bar Association is not concerned with the **amount** of the fee collected by respondents, but rather challenges the **character** of the fee agreement created in the employment contract which allows respondents to retain the entirety of **both** fees. The Bar submits that respondents could have recovered **either** the contingent contract fee or the statutory fee, but not **both.** The Bar suggests that the agreement should have provided that any statutory attorney's fee recovered by settlement or court award would be applied against the contingent amount owing under the agreement with their client, rather than in addition to it. Under that arrangement, because the negotiated statutory fee recovered was greater, Mr. Dodoo's liability under the contingent contract would have been

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."

deemed satisfied. If the contingent fee had been greater, Mr. Dodoo would have been responsible for the difference between the two amounts, but not the entire contingent fee. The Bar Association submits that respondents' dual recovery was an unwarranted windfall not authorized by federal law which constitutes an unreasonable attorney fee in violation of 1.5(a). We agree.

¶ 14 Respondents' arguments primarily focus on their contention that the dual fee arrangement is necessary and serves important public policy interests. In his testimony before the trial panel and in his briefs, respondent Weeks repeatedly stressed that larger fees make civil rights cases more attractive to competent lawyers, thereby enabling deserving plaintiffs, who could not otherwise afford to employ counsel, to obtain effective representation. Respondent Weeks also testified that fee arrangements of this type are in standard usage by attorneys in civil rights litigation in the Western District of Oklahoma and he believed that without the possibility of this type of dual recovery in a successful case, he, and other experienced lawyers who represent civil rights litigants, would cease accepting those cases.

¶ 15 In respondent's view, neither the contingent fee nor the statutory fee is sufficient in itself to compensate lawyers in civil rights cases. Weeks explained that a contingent fee may be quite small even in a successful civil rights case, since a significant monetary recovery is often not the outcome of an action for injunctive or declaratory relief. He repeatedly testified that the statutory fee alone also ordinarily provides insufficient compensation because the federal district courts routinely undervalue the hourly rate of an attorney with his experience and undercompensate the number of hours as well, often significantly reducing the billable hours used to calculate a "reasonable" fee under § 1988. According to respondent Weeks, this leads to court awarded fees that are inadequate to compensate attorneys for the tremendous work required in civil rights actions and their considerable risk of not succeeding after so much time and effort is expended, making these cases much less attractive to qualified attorneys.

¶ 16 Respondents submit that this need to supplement statutory attorney's fees with the addition of the full amount of the contingent fee which they advocate here, has taken on increased significance and urgency because the Supreme Court of the United States has now clearly established that the statutory fee cannot be enhanced based on the contingent nature of the attorney's compensation. All uncertainty surrounding this question, respondents concede, was put to rest in *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), where the Supreme Court held that enhancement for contingency is not permitted under fee shifting statutes such as § 1988. Compare *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) *(Delaware Valley II)*.

¶ 17 Respondents take the position that since *Dague*, there is no longer any basis for the belief that an attorney will receive a "reasonable fee" from a statutory award pursuant to § 1988, at least in this district. They argue that because of the holding in *Dague*, together with the likelihood that the courts will substantially undervalue the hours and rate of an attorney's compensation, there is no alternative but to conclude that statutory fee awards *must* be supplemented with the full amount of the contingent fee. This is so they submit, because a plaintiff may *have* to offer dual compensation to obtain counsel of his choice. They argue that a ruling by this Court proscribing the recovery of both fees would violate the Supremacy Clause of the United States Constitution, as well as Art. 1, § 1 of the Oklahoma Constitution, as it would frustrate the congressional policy enacted in § 1988 intended to attract competent counsel to accept civil rights litigation so that plaintiffs who do not have the funds to hire attorneys and enforce important constitutional and civil rights may do so.

■ ¶ 18 We are not persuaded by respondents' self-serving arguments offered in support of their views that they should be paid twice for one job. It seems obvious to us that a bar disciplinary proceeding before this Court is a singularly inappropriate forum to seek relief from federal policies re-

garding attorney's fees in federal cases and complain about decisions of the United States Supreme Court implementing them. If respondents have concerns about the adequacy of attorney fees awarded by federal courts in general and the effect of those fee calculations on public policy considerations, such as the availability of counsel, they should present them to the attention of the federal judiciary and Congress. These matters are not the business of this Court. Rather, it is the responsibility of this Court in disciplinary matters to safeguard the interests of the public, the courts and the legal profession from lawyers who violate standards of professional conduct. *Raskin*, supra.

¶ 19 While we must address the arguments raised by the parties, it has not escaped the Court's attention that respondents' arguments are not framed by the facts of this case. Their recurring theme centers around the factors causing the alleged insufficiency of court awarded attorney's fees in these matters: the courts' undervaluation of attorneys' hours and rates, and the fact that the statutory fee cannot be enhanced by the existence of the contingency contract. Respondents' statutory fee, however, was not obtained by award of the court, but in voluntary settlement with the defendants. If respondents believed this settlement amount was too small, they should not have accepted it. In point of fact, this Court ·is of the opinion that the fee respondents received was not insufficient by any standard: Respondent Weeks testified he worked approximately 50 hours on the case which was settled by negotiation within six months for $50,000.00 and $23,000.00 in attorney's fees.

¶ 20 In this case, of course, the federal district court had no opportunity to determine a reasonable statutory fee or consider the reasonableness of the contingent fee ar-rangement since the parties reached an agreed settlement. If the court had awarded the statutory fee in an amount the respondents considered insufficient, they could have appealed and presented their policy concerns to the Tenth Circuit.[2]

¶ 21 Respondents' concerns about the "enhancement" of their statutory attorney fees, whether controlled by pre-*Dague* or post-*Dague* factors, are not placed at issue by these facts. That concept does not apply to a settlement between parties. Enhancement is tied, by definition, to a **court's** award of attorney's fees to a fee applicant seeking from the **court** an upward adjustment of the lodestar figure the **district court** calculated. See *Dague*, supra; *Blum*, supra. What respondents are advocating here, on the other hand would be more properly styled "self-enhancement" of fees, or simply "self-help". This is not a viable legal concept in the area of attorney's fees.

### IV

¶ 22 It is necessary to provide some background of the legal issues which frame this matter in order to explain the question before us and our answer. The Civil Rights Attorneys Fees Award Act of 1976, 42 U.S.C. § 1988, provides that in selected civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee ·as part of the cost."

¶ 23 "The purpose of § 1988 is to insure 'effective access to the judicial process' for persons with civil rights grievances. Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust'." *Hensley v. Eckerhart*, 461 U.S. 424, 430, 103 S.Ct. 1933, 1937, 76

---

2. We note in passing that the Court of Appeals has expressly recognized the policy considerations raised by respondents. In *Cooper v. Singer*, 719 F.2d 1496, 1506 n. 14 (10th Cir.1983), the Court stated:

We recognize that civil rights attorneys may decline to accept cases notwithstanding a guarantee of the amount that may be potentially awarded under section 1988. To the extent that these decisions reflect that the respective cases lack legal merit, the intendment of sec-tion 1988 is fulfilled—section 1988 encourages only meritorious litigation. However, if civil rights attorneys decline meritorious cases because the expected fee awards are less than the market value of their services, then the courts have failed to fulfill their obligation under section 1988 to award reasonable fees. We therefore stress again it is essential that the fee awards reflect the fair value of actual services rendered on successful claims.

L.Ed.2d 40 (1983), *[internal quotation marks and citations omitted]*. A party is a "prevailing party" for purposes of entitlement to attorney's fees under § 1988 in a case that settles favorably to claimant prior to trial. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653, 661 (1980).

¶ 24  Congress intended that the fee awarded a prevailing plaintiff should be adequate to attract reasonably competent counsel, "but not produce windfalls to attorneys. (citations omitted)" *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). Fee-shifting statutes, such as § 1988, "were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn to a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws. Hence, if [a plaintiff finds] . . . it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee' the purpose behind the fee shifting statute has been satisfied." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) *(Delaware Valley I)*.

■  ¶ 25  The right to collect attorney's fees awarded under § 1988, belongs to the prevailing party, not his attorney. *Evans v. Jeff D.* 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747; *Venegas, supra.* The determination of what a "reasonable fee" may be in each case and the factors upon which that figure should be determined, has led to its own fairly long line of litigation. See *Blum v. Stenson, supra; Delaware Valley I, supra; Delaware Valley II, supra; Hensley, supra; Dague, supra.*

¶ 26  There is a "strong presumption" that the "reasonable fee" contemplated by § 1988 is the product of "reasonable hours times a reasonable rate." *Dague, supra; Delaware Valley I*, 478 U.S. at 565, 106 S.Ct. at 3098. This figure is known as the "lodestar" and it has become the "guiding light of our fee shifting jurisprudence." *Dague*, 505 U.S. 557, 563, 112 S.Ct. 2638, 2641.

■  ¶ 27  An upward adjustment of the lodestar amount is permissible only in "rare" and "exceptional" cases and the fee applicant bears the additional burden of showing the adjustment is "necessary." *Blum v. Stenson, supra*, 104 S.Ct. at 1548. Certain particular factors may be considered by the court in its inquiry of deciding whether to adjust the fee upward or downward although many of those factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate. *Hensley*, 461 U.S. 424, 434 n. 9, 103 S.Ct. at 1940.

¶ 28  While the interaction of contingent contract fees with § 1988 attorney's fee awards was not addressed by Congress, it has been the subject of decisions of the United States Supreme Court and lower federal courts. The Supreme Court has not passed directly on the narrow issue before us, although it has addressed closely related questions and those decisions are pertinent here. As the Bar Association points out, there are lower federal court decisions directly on point, and those will be discussed below. No decision has approved, directly or indirectly, the fee arrangement respondents defend here.

■  ¶ 29  The Supreme Court has accepted that statutory awards can coexist with private fee arrangements. *Venegas v. Mitchell*, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). A contingent fee arrangement does not impose an automatic ceiling on the award of attorney's fees under § 1988. *Blanchard v. Bergeron*, 489 U.S. 87, 92, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989). In *Blanchard*, the Court found that the presence of a contingent fee may aid a court in assessing the reasonableness of the fee award, but that it would be inconsistent with the policy and purpose of § 1988 if the contingent contract were dispositive. The Court rejected the idea that an approach other than the lodestar calculation, the "centerpiece of attorney's fee awards", should be followed where a contingent fee agreement exists. The Court stated:

"As we understand § 1988's provision for allowing a 'reasonable attorney's fee,' it contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less. Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount. The defendant is not, however, required to pay the amount called for in a contingent-fee contract if it is more than a reasonable fee calculated in the usual way."

■ ¶ 30 A prevailing party may be required to pay his attorney a contingent fee which exceeds the statutory award. In *Venegas, supra,* the United States Supreme Court addressed the issue of whether a prevailing party may have his liability under a contingent fee agreement disallowed or reduced when the contingent amount is greater than the statutory award under § 1988. The client argued that because of the Court's holding in *Blanchard* that a contingent fee amount does not impose a cap on court awarded fees, his contingent fee should also be ignored for his benefit so he would not have to pay his lawyer more than the "reasonable" fee awarded by the court against the defendant. The Supreme Court held that nothing in § 1988 invalidated a contingent fee contract's provision for a plaintiff to pay his attorney more than the statutory fee if he chose, nor did the section interfere with the enforceability of such a provision.

¶ 31 Respondent's reliance on *Venegas* in support of their position is misplaced, however, as the facts and the contractual agreement differ significantly from this case. First, the client's contingency contract obligation in *Venegas* was **greater** than the statutory award, not less. Here, Mr. Dodoo's contingent fee liability is less ($20,000.00), not more, than the statutory fee negotiated with defendant by settlement ($23,000.00). Most importantly, in *Venegas* the client had to pay his attorney only the **difference** between his greater contingency fee award and the statutory award. The employment contract at issue there expressly provided that "any fee awarded by the court would be

applied dollar for dollar to offset the contingent fee.". Accordingly, the prevailing plaintiff was held responsible for paying 40% of the recovery ($406,000.00) **offset** by the amount of the § 1988 attorney's fee award ($75,000.00).

¶ 32 The representation agreement prepared by respondent Weeks and entered into by the parties, has no provision for the contingent fee to be offset or credited by the statutory fee. To the contrary, Weeks' testimony revealed that he intentionally designed the agreement to *prevent* any offset by expressly providing that the statutory fee would be retained "in addition" to the contingent fees.

¶ 33 Respondent Weeks dismisses the Bar Association's suggestion that a dollar for dollar offset of the contingency fee such as that in *Venegas* should have been included in their fee arrangement. He contends that such a provision is only workable in a case such as *Venegas* which has the expectation of a very large damage recovery if the case is successful. In keeping with his consistent position, he argues that in an action such as Mr. Dodoo's, which has a very small potential recovery, only a fee arrangement which includes the full amount of the contingent fee in addition to the statutory fee will interest competent counsel to become involved in the case.

## V.

¶ 34 While respondents have presented self-serving arguments claiming that important public policy interests would be served by allowing them to receive dual fees, they have cited no legal authority, case law or statutory, which permits this fee arrangement. We do not find this surprising since no statute allows it and case law has consistently disapproved this dual recovery.

¶ 35 Even though the trial panel recommended no disciplinary measures for respondents, it recognized that the character of their fee arrangement was extraordinary and presented cause for concern. The panel noted, "If this contract had included some phrase to the effect that attorneys would receive either the 'contingency' or the 'court

awarded attorney fees' with the phrase 'not to exceed 50% of the total amounts awarded or collected' this question would not be before us."

¶ 36 As the Bar Association correctly notes, this suggested arrangement would be in keeping with the general rule as set forth in annot., Effect of Contingent Fee Contract on Fee Award Authorized by Federal Statute, 76 A.L.R.Fed. 347, 352 (1986), which states:

"In general, the cases explicitly or implicitly hold that the statutory award of attorney fees should not be treated as an amount in addition to that received or to be received by the attorney under a contingent fee contract, with many courts explicitly holding that the award is to be credited against the amount owed to the attorney under the contract, and if the award equals or exceeds the contractual fee, that amount is deemed paid and satisfied."

¶ 37 Those federal courts which have considered the issue of an attorney's recovery of both the court awarded statutory fee and the entirety of the contingent fee amount, have disallowed the arrangement as inappropriate and a windfall to the attorney. In *Wilmington v. J.I. Case Co.* 793 F.2d 909, 923 (8th Cir.1986), the Court of Appeals affirmed the district court's award of statutory fees but ordered that award applied on the amount due under the contingency agreement, not received in addition to that agreement. That contingent fee agreement was silent on the question of whether it would be reduced by the statutory fees awarded. The court noted the broad supervisory powers of courts over contingency fee agreements as well as the duty of courts under § 1988 to award reasonable fees, and determined that the attorneys would receive a windfall if they were to receive both the statutory fee award and the full amount due under the contingent fee agreement.

¶ 38 In *Sullivan v. Crown Paper Bd.Co., Inc.*, 719 F.2d 667 (3rd Cir.1983) the Third Circuit remanded an action for consideration of the contingent agreement terms, stating that counsel should recover the contingent amount or the statutory amount, whichever is greater. The court determined that where the contingent fee is greater, plaintiff would be directed to pay counsel the difference between the two fees. Where (as here) the statutory fee is greater, plaintiff's contingent obligation to counsel should be deemed settled. Similarly, in *Sargeant v. Sharp*, 579 F.2d 645, 648 (1st Cir.1978), the Court of Appeals suggested that where the attorney has been paid a contingent fee in an amount equal to or above the amount of a statutory fee award, plaintiff should be reimbursed that amount when the court sets the fee, Plaintiff should be paid "any excess over that amount of the fee arrangement" going to counsel.

¶ 39 Likewise, in *Wheatley v. Ford*, 679 F.2d 1037, 1041 (2nd Cir.1982), plaintiff's fee obligation to his attorney was "deemed paid and satisfied" to the extent of the § 1988 statutory award ordered. In *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255 (8th Cir.1980), the client was represented by co-counsel and the contract provided that one attorney would receive the entire contingency fee award (45% of the total recovery) and the other counsel would receive the statutory fee award. The net effect of the contract was, as the Bar Association notes, similar to that of the representation agreement employed by respondents here. After review, the court objected to the fee arrangement, finding that it breached the "outer limits of reasonableness".

¶ 40 In *Hamner v. Rios*, 769 F.2d 1404 (9th Cir.1985), the Court of Appeals remanded an action for determination of a reasonable statutory fee. Emphasizing the power of the courts to supervise fee awards under contingency contracts to avoid unreasonable results, the Court instructed the lower court to determine a reasonable statutory fee award, and then, if the statutory award was less than the contingent fee, to consider whether plaintiff should be compelled to pay the difference between the statutory amount and the contingency fee.

¶ 41 In *Venegas v. Skaggs*, 867 F.2d 527 (9th Cir.1989), the Ninth Circuit affirmed the district court's ruling that contingent fee arrangements which exceed the statutory

award are permissible under § 1988, as that statute does not set a ceiling on plaintiff's entitlement to fees under a contingent fee contract. This ruling was later affirmed by the Supreme Court in *Venegas v. Mitchell, supra.* Addressing the issue of whether plaintiff should be required to pay the **difference** between the statutory fee and the greater contingency contract amount, the Court answered in the affirmative in a manner that leaves no doubt that under our facts (where the statutory award is greater than the contingent amount) the Court would consider the dual recovery improper. The Court stated, "The plaintiff's attorneys are not entitled to *both* the statutory award and the full amount of the contingent fee." At 534 n. 7.

## VI.

¶ 42 In keeping with the above authorities, we are compelled to the conclusion that by retaining the entirety of the contingent fee deducted from Mr. Dodoo's recovery in addition to the statutory fee, respondents' fee arrangement exceeded existing federal case law. We find that the Bar Association has therefore met its burden of showing by clear and convincing evidence that respondents' fee arrangement violated Rule 1.5(a). Attorneys who take a greater share of the amount of money recovered for a client as an attorney's fee than they are entitled to receive under existing law are subject to discipline. *State ex rel. Okl. Bar Ass'n. v. Fagin,* 1992 OK 118, 848 P.2d 11 (Okl.1992); *State ex rel. Okl. Bar Ass'n. v. Mason,* 1963 OK 89, 380 P.2d 961 (Okl.1963); *State ex rel. Okl. Bar Ass'n v. Moss,* 1978 OK 61, 577 P.2d 1317 (Okl.1978).

¶ 43 We are not persuaded by respondents' contentions that charges against them are inappropriately brought by the Bar Association under Rule 1.5(a). They contend that the reach of that provision is limited to challenges to the *amount* of fees taken from a

client's recovery, and because their contingent percentage of Mr. Dodoo's recovery was only 40% (less than the statutory minimum of 50% set by 5 O.S.1991, § 7), the rule is not properly implicated. Respondents additionally argue that Rule 1.4(d) of the Rules Governing Disciplinary Proceedings precludes the imposition of discipline under Rule 1.5 here as there was no showing or finding of extortion or fraud by the trial panel. That rule provides that controversies "as to the amount of fees shall not be considered a basis for charges ... unless it is made to appear that the amount demanded is extortionate or fraudulent."

¶ 44 This controversy, of course, does not concern the **amount** of a contingent fee and it was not necessary to make a showing or finding of extortion here. We find that the reasonableness standard of Rule 1.5(a) encompasses, by definition, the minimum requirement that a fee received by an attorney licensed by this Court must be warranted under existing law.[3] An unwarranted fee is a per se unreasonable fee.

¶ 45 Additionally, it is undisputed that respondents failed to communicate with Mr. Dodoo about the negotiations and settlement of the statutory attorney's fee in violation of Rule 1.4, as charged in the original complaint. Respondents do not deny that they failed to inform their client. In fact, they made it clear in their pleadings; they also stipulated to it, testified about it and discussed it in their briefs. Respondent Weeks' consistent explanation for the omission was that the fee was theirs, not Mr. Dodoo's, and since he had no claim to it, he had no reason to know about it. Weeks reasoned that if Mr. Dodoo had been a pro se litigant, he would not have received attorney's fees and, therefore, the statutory fee was exclusively theirs. This is particularly so, Weeks adds, in light of the assignment of that fee in the representation agreement.

---

3. Rule 1.5 now covers the provisions formerly set forth in DR–2–107, 5 O.S.Supp.1983, ch.1, App.3, as follows:

   "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. .... A fee is clearly excessive when, after a review of the facts, a lawyer of

ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee ..."

See *State ex rel. Okl. Bar Ass'n. v. Watson,* 897 P.2d 246 (Okl.1995), *Oklahoma Turnpike Authority v. New Life Church,* 870 P.2d 762 (1994).

¶ 46 Respondent is mistaken, however. The fee belonged to Mr. Dodoo. Under applicable federal law, Mr. Dodoo was eligible to collect the statutory fee; it was his right to waive, settle or negotiate that eligibility. *Evans v. Jeff D.,* 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986); *Venegas v. Mitchell, supra.* The Bar does not challenge the claimed assignment of the statutory fee, and its validity and effectiveness are not before us for decision today.

¶ 47 For purposes of addressing the question before us, we find that even if we were to assume, for the sake of argument, that the assignment was valid, respondents were not thereby relieved of their duty imposed by Rule 1.4 to keep their client informed of the settlement of attorney's fees in his case.[4] This they failed to do.

¶ 48 For the reasons stated above, we find that clear and convincing evidence shows that the fee arrangement did violate Rule 1.5(a) and respondent Joseph Weeks is hereby publicly censured and is ordered to pay the costs of this proceeding in the amount of $1,134.75, within 90 days of the effective date of this opinion.

KAUGER, C.J., SUMMERS, V.C.J., and LAVENDER, and HARGRAVE, JJ., concur.

SIMMS, J., concurs specially.

HODGES, J., concurs in result.

OPALA, ALMA WILSON, JJ., concur in part, dissent in part.

WATT, J., dissents.

SIMMS, Justice, concurring specially:

¶ 1 I concur with the majority, however, I would find respondent Nation is also subject to discipline and publicly censure him for his participation in this fee arrangement. Additionally, I would order both respondents to make restitution to Mr. Dodoo of the $20,000 contingent attorney's fee. Even though restitution may undoubtedly be obtained in the district court, I would resolve the issue in this discipline matter. Respondents obtained a windfall recovery which they were not entitled to receive and I would order them to return it to their client as restitution.

WATT, Justice, dissenting:

I would suspend each respondent for some period of time.

OPALA, Justice, dissenting in part:

I would (a) *administer* public reprimand to respondents Weeks and Nation; (b) *order* that they pay the costs of this proceeding not later than 90 days after this court's opinion becomes final; (c) *direct* that they not be restored to good standing as licensed Oklahoma practitioners until they have made restitution to Mr. Dodoo, their former client, of $20,000—the amount of their excessive contingent-fee recovery; and (d) *provide* that they refund the excess fee recovered not later than 30 days after this opinion becomes final. In sum, I join the separate statement authored by Simms, J.

---

4. Rule 1.4 provides:
   "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."