Jeffery Paul WALLACE, Appellee,

v.

HALLIBURTON COMPANY and Halliburton Services, a division of Halliburton Company, Appellants.

No. 70351.

Supreme Court of Oklahoma.

March 16, 1993.

Jack L. Shears, Shears & Shears and Donald J. Hopkins, Tulsa, for appellee.

Jim T. Priest and Sharon K. O'Roke, McKinney, Stringer & Webster, Oklahoma City, for appellants.

LAVENDER, Vice Chief Justice.

Three issues are presented for our consideration. The first question is whether the trial court erred in overruling Appellants' motion for a directed verdict and new trial. We must then determine if the jury should have been permitted to award punitive damages and if so, whether the correct statute was applied. Finally, we must resolve the question of whether Appellee was entitled to attorneys fees.

Jeffery Paul Wallace (Claimant/Appellee), an employee of Halliburton, (Defendant/Appellant) was injured on the job on January 8, 1985. On February 16, 1985, Wallace filed a workers' compensation claim. He was fired from his job on March 30, 1985.

In March 1986, Wallace filed suit in district court alleging he was discharged in retaliation for filing the workers' compensation claim. Wallace sought actual and punitive damages under 85 O.S.1981 §§ 5 & 6.[1] Halliburton denied that Wallace was

---

1. 85 O.S.1981 § 5 [now revised see 85 O.S.1992 § 5] provides:

No person, firm, partnership or corporation may discharge any employee because the em-

fired for filing the workers' compensation claim. The company maintained that Wallace was dismissed because of a general slow down in the oil business.

The jury found for Wallace and awarded him $12,000.00 in actual damages and $42,000.00 in punitive damages. Halliburton's motion for a new trial was overruled. The trial court awarded Wallace attorneys' fees. The judge determined *City National Bank v. Owens*,[2] and *Christian v. American Home Assurance Co.*,[3] provided for such an exception to the American Rule wherein each party is expected to pay its own attorney fee. The court of appeals affirmed the trial court. This court previously granted certiorari.

## I.

We have ruled on the issue of retaliatory discharge more than once. In *Thompson v. Medley Material Handling, Inc.*,[4] this court adopted a test for establishing when an employee was discharged for exercising rights under the Workers' Compensation Act. We held:

If retaliation plays a *significant part* in an employer's decision to place an employee among a list of those to be laid off for economic reasons, that employee has been discharged because of the exercise of rights granted under statute. We hold that when retaliatory motivations comprise a *significant factor* in an employer's decision to terminate an employee, even though other legitimate reasons exist to justify the termination, the discharge violates the intent of section 5.[5]

We further stated that although in cases of this nature, the evidence would be mostly circumstantial, the evidence must at be least sufficient to support a *legal inference* the discharge was significantly motivated by retaliation for exercising one's statutory rights.[6] Otherwise, we noted, any employer could be subjected to a jury trial based purely on the coincidence of a discharged employee who had at sometime filed a Workers' Compensation claim.[7]

■ The facts of the *Thompson* case are distinguishable from the case before us. Thompson performed long haul trucking for Medley Material Handling. After his on-the-job injury on August 23, 1982, he filed a claim for Workers' Compensation benefits. Thompson returned to work after his injury, however, he was *unable to perform his job because of his disability.* He was offered a different position but at the same salary because of his disability and this led to disputes with his supervisors.[8]

Medley terminated Thompson's employment on December 6, 1982 citing a necessity for a company-wide reduction in staff due to the decline in the oil industry. Thompson's evaluations up to the time of his injury were favorable and he had the most seniority in the service department.

ployee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties.

85 O.S.1981 § 6 [now revised *see* 85 O.S.1992 § 6] reads:

A person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former posi-

tion. The burden of proof shall be upon the employee. (citations omitted).

**2.** 565 P.2d 4 (Okla.1977).

**3.** 577 P.2d 899 (Okla.1978).

**4.** 732 P.2d 461 (Okla.1987).

**5.** *Thompson*, 732 P.2d at 463 (emphasis added).

**6.** *Id.*

**7.** *Id.*

**8.** Though *Medley* did not raise this as a defense, we note that an employer is not required to retain an employee who is unable to perform the job the employee was hired to do. 85 O.S. 1981 § 5. *See Bishop v. Hale–Halsell Co.*, 800 P.2d 232 (Okla.1990).

 The jury returned a verdict in Thompson's favor and the Court of Appeals affirmed. We determined, however, that taking the evidence in the light most favorable to Thompson, he failed to prove that his termination and the filing of his claim were at all *connected* other than to establish that the two events happened approximately six weeks apart. It is true, that timing *may* be evidence of a retaliatory discharge. For example, where a claim is filed one day and the employee is discharged in a relatively short time span. However, timing does not by itself give rise to the level of evidence required to establish a prima facie case. In *Thompson,* the timing of his discharge was basically all he relied upon.

We reaffirmed *Thompson* in *Elzey v. Forrest,*[9] and again in *Buckner v. General Motors Corp.*[10] In *Elzey* we said that an employee does not have to meet a "but for" standard, however, we ruled that the evidence must do more than show that the filing of the claim was only one of many possible factors resulting in his discharge. In *Buckner,* we expanded on the various burdens that must be met by both the employee and employer in a retaliatory discharge action and again reaffirmed the "significant factor" requirement first expounded in *Thompson.*

*Buckner* said the employee must prove: 1) employment; 2) a job related injury; 3) medical treatment so that the employer is put on notice or a good faith start of Workers' compensation proceedings and; 4) *consequent* termination. Of course, following our earlier *Thompson* findings discussed herein, whether there was a *consequent* termination is dependent upon the employee producing evidence as would give rise to a legal inference the discharge was significantly motivated by retaliation for the employee exercising statutory rights.[11]

## II.

 In the case before us, Halliburton admits the first three *Buckner* elements.

However, the company asserts that there was insufficient evidence to support a legal inference it was significantly motivated to discharge Wallace in retaliation for his filing a claim under the Workers' Compensation Act, i.e. the *consequent* termination. After reviewing all the evidence, we disagree.

Wallace submitted evidence that he was fired thirty-seven days after filing his claim and that his supervisors knew or should have known of his injury and claim. Prior to his injury, he had been rated competent or commendable in most areas of his work and had recently received a raise and a promotion. There was no evidence that Wallace could not perform his job upon returning to work.

There was evidence that employees were encouraged to file work related injuries under Halliburton's self-health insurance rather, than under workers' compensation. Wallace and one other witness stated they had filed previous injuries under their health insurance rather than apply for workers' compensation. A Halliburton employee from another plant testified that his supervisor got mad when he said he was going to file a workers' compensation claim.

There was testimony from Wallace and another Halliburton employee who said they worried about being discharged if they filed a claim for workers' compensation. Evidence was offered that other employees less qualified than Wallace but who had not filed compensation claims were not let go. Evidence of a pattern of terminating employees who filed workers' compensation claims was offered.

The question is did this evidence give rise to a legal inference that Halliburton's decision, to place Wallace among a list of those to be laid off for economic reasons, was significantly motivated by Wallace's filing a claim for Workers' Compensation. We find, that under the facts of this case, a jury could have concluded with reasonable probability that Wallace's filing a claim

---

**9.** 739 P.2d 999 (Okla.1987).

**10.** 760 P.2d 803 (Okla.1988).

**11.** *Thompson,* 732 P.2d at 463.

was a significant factor in Halliburton's decision to choose him as one of the four employees to be laid off. Though the evidence was controverted by Halliburton, it was for the jury to decide what weight the evidence would be afforded. The trial court did not error in overruling Halliburton's motions for directed verdict and new trial and we affirm on this issue.

### III.

Halliburton next alleges that the trial court should not have submitted the question of punitive damages to the jury and that the amount of punitive damages exceeded the amount allowed by law. In *Webb v. Dayton Tire & Rubber Co.,*[12] we stated:

> In adopting as a matter of law the doctrine of a civil tort cause of action as against an employer for wrongful discharge of an employee in wilful violation of the provisions of the Workers' Compensation Act, we take cognizance of the legislative intent that the trier of fact be vested with broad discretion in determining the amount of recovery, as manifested by the terms 'reasonable damages' and 'to restrain violations'. What is reasonable and appropriate under the circumstances is necessarily a question of fact. We deem it proper and necessary that exemplary damages be assessed against an employer *under appropriate circumstances* in strict conformity with the purpose therefor, to prevent the practice. In the absence of the deterrent effect of punitive damages, there would be little to dissuade an employer from engaging in the practice of discharging an employee for filing a workman's compensation claim.

We reaffirm our holding in *Webb,* acknowledging those cases where under *appropriate circumstances* punitive damages would be warranted. An employee must offer evidence to warrant an instruction on punitive damages. The fact the

employee was discharged in retaliation for filing a workers' compensation claim is not enough. In reviewing the record, we find that there was evidence as would support a pattern of retaliatory discharges on behalf of Halliburton. This evidence justifies the award of punitive damages as permitted by statute in effect when the cause of action arose. The award is affirmed.

### IV.

Finally, appellee was awarded attorneys' fees. However, this court also ruled in *Webb v. Dayton Tire,*[13] discussed above that:

> It is well settled in Oklahoma, with narrow exception, that attorney fees are not recoverable by a prevailing party in absence of statute or enforceable contract expressly authorizing same. The present suit was brought to recover damages for retaliatory dismissal pursuant to 85 O.S.1981 § 5–7. A retaliatory dismissal suit is not an action to recover *for* labor or services within the meaning of 12 O.S. 1981 § 936, as urged by Webb. The statutory penalty provided for tortious discharge under 85 O.S.1981 § 6 is *reasonable damages;* and, there is nothing in the record to bring the question within the exception established in *City Nat'l Bank and Trust Co. v. Owens,* 565 P.2d 4 (Okla.1977), where defendant was awarded attorney fees by reason of the plaintiff's misconduct of trial proceedings at defendant's expense.

Likewise, in the present case, we find nothing that would give rise to the level of conduct described in *City Nat'l Bank v. Owens.*[14] Moreover, "[t]he *Owens* pronouncement that trial courts have the equitable power to award attorney fees in proper cases was not a declaration of a broad, all-encompassing theory of equity. The *Owens* exception is a narrow one. It should be applied with a degree of caution

---

**12.** 697 P.2d 519, 523 (Okla.1985) (emphasis added).

**13.** 697 P.2d 519, 522 (Okla.1985) (citations omitted).

**14.** 565 P.2d 4 (Okla.1977). *See also Smith v. State of Oklahoma,* 788 P.2d 959 (Okla.1990).

and restraint." [15] The award of attorneys fees is reversed.

### CONCLUSION

Accordingly, the Order of the Court of Appeals is VACATED. The judgment of the trial court is AFFIRMED IN PART and REVERSED IN PART.

HODGES, C.J., and SIMMS, HARGRAVE, OPALA, ALMA WILSON, KAUGER and WATT, JJ., concur.

SUMMERS, J., concurs in judgment.