**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 24 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BENJAMIN N. BAFFOE, an
individual,

     Plaintiff - Appellant,

v.

W. H. STEWART CO.,

     Defendant - Appellee.

No. 99-6199
(W.D. Oklahoma)
(D.C. No. CIV-98-1256-W)

**ORDER AND JUDGMENT**  *

Before  **BRISCOE** , **McWILLIAMS** , and **ALARCÓN** ,** Circuit Judges.

Benjamin N. Baffoe ("Baffoe") appeals from the dismissal of this action

pursuant to the order granting summary judgment in favor of the W. H. Stewart

Co. ("W. H. Stewart"). Baffoe contends that the district court erred in concluding

that there is no genuine issue of material fact in dispute regarding whether he was

---

  *     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and judgment may
be cited under the terms and conditions of 10th Cir. R. 36.3.

  **     The Honorable Arthur L. Alarcón, Senior United States Circuit Judge for
the Ninth Circuit, sitting by designation.

denied employment by W. H. Stewart in violation of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 et seq., and unlawfully terminated as a temporary worker in violation of the Oklahoma Workers' Compensation Act, Okla. Stat. tit 85, § 5.

We affirm because we conclude that Baffoe failed to present evidence that he was denied employment by W. H. Stewart in violation of the ADA. We also hold that Baffoe has failed to demonstrate that W. H. Stewart terminated his assignment as a temporary worker in retaliation for filing workers' compensation claims against his former employers.

I

W. H. Stewart is a steel fabricating "job shop." Its labor force varies according to the number of orders it receives. Because its need for workers is cyclical, it relies on temporary employment agencies to provide unskilled laborers. About 28% of W. H. Stewart's work force consists of temporary workers.

Snelling Personnel Services ("Snelling") provides temporary workers to businesses needing such assistance. At all relevant times, Baffoe was an employee of Snelling. W. H. Stewart entered into a contract with Snelling to provide it with temporary workers. In March of 1995, Snelling assigned Baffoe to work for W. H. Stewart temporarily as a deburr operator. Pursuant to its

contract with Snelling, W. H. Stewart paid Snelling for Baffoe's services as a temporary worker. Baffoe testified at his deposition that during the entire time he was assigned to work at W. H. Stewart, he was a Snelling employee – not a W. H. Stewart employee.[1]

It is W. H. Stewart's policy to make a conditional offer of employment to temporary workers after they have worked between six months and one year. W. H. Stewart made Baffoe a conditional offer of employment in December of 1995. The offer was contingent upon the satisfactory completion of a medical examination and whether a background check revealed that Baffoe's representations regarding his medical history were truthful. Thereafter, Baffoe applied for the position of deburr operator with W. H. Stewart, the same job to which he had been assigned as a temporary worker. After the offer of employment, Baffoe was sent to a physician for a physical examination. He was required to fill out a medical history form. He failed to list on that form that he suffered an on-the-job injury to his back while working for another employer prior to his temporary assignment at W. H. Stewart. Instead, he represented that he had had a back x-ray and undergone operations for a hernia in 1991 and

---

[1] The ADA prohibits discrimination against disabled job applicants or employees. See 42 U.S.C. § 12112(a). Thus, whether Baffoe was an employee of W. H. Stewart or Snelling when W.H. Stewart withdrew its offer of employment is not relevant to our consideration of the merits of his ADA claim.

tendinitis in 1994. Orally, Baffoe represented to Norman Seide, W. H. Stewart's controller: "I had no injuries at all."

As part of the background check that it performs on temporary workers who apply for employment, W. H. Stewart routinely checks to determine whether an applicant has filed for workers' compensation benefits in order to compare the prior medical history obtained from the applicant with his or her claims of prior on-the-job injuries filed before the Workers' Compensation Court. An examination by W. H. Stewart's personnel of the workers' compensation records in this case revealed that Baffoe had experienced lower back pain in 1993. His back was x-rayed in diagnosing his complaint. A medical examiner concluded that Baffoe had a 21% permanent partial disability due to injuries to the lumbar spine. The records also disclosed that in 1994, Baffoe had tendinitis in his wrists. This condition required surgery on his left wrist. The surgery was performed on July 6, 1994. In a report dated September 29, 1994, submitted in a workers' compensation action against a former employer, a medical examiner concluded that Baffoe had a 15% permanent partial disability as a result of the tendinitis in his hands. The same medical report also disclosed that Baffoe had been released from physical therapy on September 6, 1994 and returned to work on or about September 22, 1994.

W. H. Stewart has a long-standing policy that it will not hire an applicant

who gives false information on an employment application or on a medical history form. Upon discovering that Baffoe had misrepresented facts concerning his medical history, W. H. Stewart withdrew its conditional offer of employment. Seide informed Baffoe that the conditional offer had been withdrawn because he had not been truthful in his responses to the medical history form. Seide explained to Baffoe that W. H. Stewart's insurance carrier would not allow the company to hire someone who had been awarded workers' compensation benefits for on-the-job injuries while working for a former employer. Seide told Baffoe that while he could not hire him as a W. H. Stewart employee, he could continue to work there on a temporary assignment. Baffoe agreed to continue his temporary assignment with W. H. Stewart. During the entire time that Baffoe was assigned as a temporary worker at W. H. Stewart, Snelling paid the workers' compensation insurance premiums to cover any benefits resulting from any on-the-job injuries that he might suffer at W. H. Stewart.

After the withdrawal of the conditional offer of employment, Baffoe continued his assignment at W. H. Stewart as a Snelling temporary worker for over one year. During that time, Baffoe repeatedly complained about the fact that he had not been made a regular employee of W. H. Stewart. In June or July of 1996, Baffoe asked John Walsh, W. H. Stewart's plant manager, to explain why Baffoe had not been hired as an employee of W. H. Stewart. Walsh informed

Baffoe that he could not be hired because he had given false information to the doctor regarding whether he was permanently disabled. Baffoe denied that he was permanently disabled. Walsh then stated that if Baffoe could obtain a medical report stating he was no longer permanently disabled as a result of the injury to his hands, Walsh would hire him. After his conversation with Walsh, Baffoe obtained a new medical report dated September 3, 1996 which stated: "Mr. Benjamin Baffoe is physically capable of performing any type of physical work at this time. His previous ailments have completely cleared." Baffoe was unable to deliver the medical report to Walsh because he was on administrative leave.

Baffoe did not receive an offer of employment after he delivered the new medical report to a supervisor. While there is some dispute in the record regarding whether Baffoe created a disturbance in W. H. Stewart's reception area in December of 1996, the record discloses that W. H. Stewart informed Snelling that Baffoe should not be assigned to work for W. H. Stewart shortly after he forcefully stated his position that he should be hired as a full-time regular employee. Snelling reassigned Baffoe to work for a different company.

On August 17, 1998, Baffoe filed a petition in the District Court of Oklahoma County, State of Oklahoma, to recover past wages and benefits, future wages and benefits, compensation for emotional distress, and punitive damages for violations of the ADA and the Oklahoma Workers' Compensation Act. The

action was removed by W. H. Stewart to the United States District Court for the Western District of Oklahoma on September 15, 1998.  On April 29, 1999, the district court entered summary judgment in favor of W. H. Stewart on Baffoe's state and federal claims.  Baffoe filed a timely notice of appeal on May 21, 1999. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II

Baffoe first contends that the district court erred in concluding that he was not unlawfully discriminated against because he was not disabled under the ADA. We review de novo a district court's decision granting summary judgment.  See Smith v. Midland Brake, Inc., 180 F.3d 1154, 1159-60 (10th Cir. 1999) (en banc). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Id. (citing Fed. R. Civ. P. 56(c)) (quotations omitted).

The ADA is a federal antidiscrimination statute enacted by Congress to remove barriers that prevent qualified individuals from enjoying employment opportunities that are available to individuals without disabilities.  See 29 C.F.R. pt. 1630, App.  To establish a prima facie case of discrimination under the ADA, an individual must first establish that he or she is a disabled individual within the

meaning of the statute. See Rascon v. U.S. West Telecomm., Inc., 143 F.3d 1324, 1332 (10th Cir. 1998). Under the ADA, an individual is disabled if he or she (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment. See 42 U.S.C. § 12102(2).

Baffoe does not claim that he in fact suffers from a physical impairment that substantially limits his ability to work.[2] To the contrary, he presented a medical report, in his opposition to the motion for a summary judgment, which states that "he is physically capable of performing any type of physical work at this time." The report further states that "[h]is previous ailments have completely cleared." The record also shows that Baffoe successfully performed the duties of a deburr operator for approximately 18 months without requiring an

---

[2] For the first time in his reply brief, Baffoe asserts that his impairments affected other major life activities, including lifting. We decline to consider this contention because he raised the issue for the first time in his reply brief. See Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1278 (10 Cir. 1994) (stating that an appellant who fails to raise an issue in an opening brief waives it). Moreover, while a plaintiff may normally wait until trial to prove with particularity the impairment and major life activity at issue, Baffoe could not have avoided making such a showing under Rule 56 of the Federal Rules of Civil Procedure after W. H. Stewart challenged the alleged disability in its motion for summary judgment. See Wilson v. International Bhd. of Teamsters, Chauffeurs Warehousemen, 47 F. Supp.2d 8, 11 n.2 (D.D.C. 1999) (holding that a plaintiff must establish with particularity the substantial impairment and the major life activity in response to a defendant's motion for summary judgment); cf. Poindexter v. Atchison, Topeka & Santa Fe Ry. Co., 168 F.3d 1228, 1231 (10th Cir. 1999) (holding that a plaintiff must prove the elements of a disability with particularity at trial).

accommodation.

Baffoe maintains that the district court erred in concluding that he did not have a record of a physical impairment that substantially limited his ability to perform the major life activity of working. We disagree. The record shows that prior to being assigned to W. H. Stewart as a temporary worker, Baffoe was awarded workers' compensation benefits from previous employers for injuries to his hands and back. The record also shows that each of these injuries was initially rated as a permanent partial disability. In a letter dated September 29, 1994, however, Dr. Griffith C. Miller stated that Baffoe had been released to return to work. As noted above, a medical report dated September 3, 1996 states that Baffoe's "previous ailments have completely cleared."

The Workers' Compensation Court's records do not show that he had a record of an impairment that substantially limited his ability to work when the offer of employment was withdrawn by W. H. Stewart. "For an impairment to substantially limit a major life activity, the individual must be unable to perform, or be significantly limited in the ability to perform, an activity compared to an average person in the general population." Sorensen v. University of Utah Hospital, 194 F.3d 1084, 1087 (10th Cir. 1999) (citing 29 C.F.R. § 1630.2(j). The medical records in the Workers' Compensation Court files reflect that while Baffoe was unable to work while he recovered from the surgery for tendinitis, he

was released to return to work in less than three months after he completed his physical therapy. Thus, these records indicate that Baffoe suffered from "[t]emporary, non-chronic impairments of short duration, with little or no long-term or permanent impact." 29 C.F.R. pt. 16330, App. § 1630.2(j). Such impairments are usually not classified as disabilities under the ADA because they do not impose a substantial limitation on the ability to work. See id.; see, e.g., Colwell v. Suffolk County Police Dept., 158 F.3d 635, 646 (2d Cir. 1998) (finding that a recorded impairment was not substantially limiting where the employee was hospitalized for approximately 30 days, remained at home for approximately six months following his hospitalization, and was placed on light duty for seven years following his return to work); Sanders v. Arneson Products, 91 F.3d 1351, 1354 (9th Cir. 1996) (holding that a three and one-half month impairment with minimal residual effects was not substantially limiting). While Baffoe has a record of physical impairments, the workers' compensation records do not reflect that his physical impairments substantially limited his ability to work as a deburr operator.

Baffoe further asserts that W. H. Stewart withdrew its offer of employment because it regarded him as having a physical impairment that substantially limited his ability to work. The record does not support this contention. As noted above, W. H. Stewart permitted Baffoe to continue to work as a deburr operator for

-10-

approximately one year after it withdrew its offer of employment. That job required him to stand, walk, use his hands, and regularly lift or move objects weighing up to one hundred pounds. Baffoe's own persistent insistence that he was not disabled, and the fact that he was allowed to continue to be assigned after W. H. Stewart's personnel reviewed his workers' compensation records, is compelling evidence that W. H. Stewart did not regard his physical impairments as substantially limiting his ability to work.

In a recent unpublished opinion of this court, an employee also maintained that his employer perceived him as disabled because he had previously filed two workers' compensation claims against the employer and "supervisor Harm feared he would injure himself again and file additional claims." McDonnell v. Farmland Industries, Inc., No. 98-3100, 1999 WL 311477, at 182 F.3d 932 (10th Cir. May 18, 1999). This court rejected the employee's contention because the employer continued to employ the plaintiff-appellant at the same job for more than six months, after he received workers' compensation benefits. Id. In rejecting this contention, this court stated: "[A]n employer's belief that an individual is a high risk for workers' compensation claims, without more, is not a disability under the ADA." Id. at *3. In reaching this conclusion, the court reasoned as follows:

> Defendant continued to employ him in the position of transfer
> pumper until the conclusion of his employment. It is undisputed that

the transfer pumper job required heavy lifting and other tasks requiring physical strength and flexibility. We conclude that plaintiff has failed to establish the first criterion of a prima facie case – that he is a disabled person within the meaning of the ADA – because he has failed to demonstrate that defendant regarded him as having an impairment that substantially limited one or more major life activities.

Id. at *3.

This court affirmed the order granting summary judgment because the employee had failed to make a showing sufficient to establish that his employer perceived him to be disabled under the ADA. Id. Although we recognize that McDonell is not binding precedent because it is not a published opinion of this court, 10th Cir. R.36.3, we find it persuasive and adopt its analysis. The fact that W. H. Stewart's personnel reviewed the Workers' Compensation Court records and expressed concern about Baffoe's physical impairments and the possibility that he might reinjure himself does not demonstrate that he was regarded as disabled, as that term is defined in the ADA, when the offer of employment was withdrawn, in view of the fact that he was allowed to continue working as a deburr operator for approximately one year before his temporary worker status was terminated.

We emphasize that Baffoe's reliance on statements by W. H. Stewart's personnel that he was "disabled" or had a "disability" largely misperceives the scope of the protection afforded to an employee under the ADA. The issue in this

appeal is not whether Baffoe had a record of a disability or whether he was perceived as being disabled as that term is defined under the Oklahoma Workers' Compensation Act. Instead, we must decide whether Baffoe had a record of a disability, or was perceived as disabled, as those terms are used in the ADA. Though statements made in connection with an application for disability benefits may be probative as to the question whether an employee suffers from a mental or physical disability that substantially limits one or more major life activities, they are neither dispositive of the inquiry nor sufficient to give rise to a genuine issue of material fact. See Aldrich v. Boeing Co., 146 F.3d 1265, 1268-69 (10th Cir. 1998). A record of disability "must be one that shows an impairment that satisfies the requirements of the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough." Colwell, 158 F.3d at 645. A perception that an employee is disabled must also be one that the individual is disabled under the ADA and not that he or she is disabled for some other purpose.

In the present case, it was not enough for Baffoe to present evidence that his workers' compensation records used the word "disabled" or that they provided him with a permanent disability rating. Nor was it sufficient for Baffoe to show that W. H. Stewart employees referred to him as disabled or at risk for reinjury. Rather, Baffoe was required to establish that he had a record of an impairment

that substantially limited his ability to work or that he was regarded as having such an impairment.  See 42 U.S.C. 12102(2).  Because he failed to do so, the district court did not err in granting summary judgment on his ADA claim.

III

In a separate cause of action, Baffoe contends that W. H. Stewart violated the Oklahoma Workers' Compensation Act when it requested Snelling to terminate his temporary work assignment.[3]  Baffoe argues that W. H. Stewart took this action in retaliation for the fact that he filed workers' compensation claims against two previous employers.  An employer may not terminate an employee for exercising his or her rights under the Oklahoma Workers' Compensation Act. Taylor Cache Creek Nursing Centers, 891 P.2d 607, 609 (Okla. App. 1994).

To establish a prima facie case of retaliatory discharge under the Oklahoma Workers' Compensation statute, a discharged employee must show (1) that he or she was an employee of the defendant, (2) that he or she suffered an on-the-job injury, (3) that he or she received medical treatment under circumstances which

---

[3]     The Oklahoma Workers' Compensation Act provides, in pertinent part:

> No person, firm, partnership, corporation or other may discharge, or, except for non-payment of premium, terminate any group health insurance of any employee because the employee has in good faith:
> 1. Filed a claim. . . .

Okla. Stat. tit. 85, § 5(A)(1).

-14-

put the employer on notice that the treatment had been rendered for an on-the-job injury, (4) that he or she instituted workers' compensation proceedings in good faith, and (5) that his or her employment was terminated as a result. See Buckner v. General Motors Corp., 760 P.2d 803, 806 (Okla. 1988).

In Wallace v. Halliburton, 850 P.2d 1056 (Okla. 1993), the Oklahoma Supreme Court held that: "The evidence must be at least sufficient to support a legal inference the discharge was significantly motivated by retaliation for exercising one's statutory rights." Id. at 1058. The Oklahoma Supreme Court reasoned that "[o]therwise . . . any employer could be subjected to a jury trial based purely on the coincidence of a discharged employee who had at sometime filed a Workers' Compensation claim." Id.

In Wallace v. Halliburton, the employee was fired 37 days after he filed a workers' compensation claim. Id. The employee also presented evidence of a pattern of terminating employees who filed workers' compensation claims. Id. The Oklahoma Supreme Court concluded that the trial court did not err in overruling the employer's motions for a directed verdict and a new trial. Id.

Here, Baffoe did not present evidence that W. H. Stewart had a policy or practice of terminating employees who file workers' compensation claims. See Blackwell v. Shelter Mut. Ins. Co., 109 F.3d 1550, 1555 (10th Cir. 1997). Baffoe was reassigned approximately one year after W. H. Stewart learned that Baffoe

had filed workers' compensation claims against previous employers.  Looking at the entire evidence in the light most favorable to Baffoe, "we do not believe a reasonable jury could conclude [his] [reassignment] was significantly motivated by retaliation for exercising [his] rights under the Workers' Compensation Act. [Baffoe] has simply failed to establish a nexus between [his] termination and any protected activity on [his] part." Id. at 1556.  Because we conclude that Baffoe failed to present sufficient evidence to demonstrate that W. H. Stewart's request for a reassignment was significantly motivated by the filing of workers' compensation claims against previous employers, we need not decide whether Baffoe was an employee of W. H. Stewart, under the loaned-servant doctrine, or whether the Oklahoma Workers' Compensation Act applies when the claim was filed for an injury that occurred while the employee worked for a previous employer.

CONCLUSION

Baffoe has failed to demonstrate that he is a disabled individual under the ADA.  He has also failed to present sufficient evidence to meet his burden of proof that W. H. Stewart's decision to request that Snelling reassign him was significantly motivated by the fact he had filed workers' compensation claims against previous employers.  The judgment of the district court is AFFIRMED. Baffoe's motion to strike W. H. Stewart's supplemental appendix and portions of

the response brief is DENIED as moot.  W. H. Stewart's motion to withdraw its supplemental appendix and file an amended brief is GRANTED.

Entered for the court

Arthur L. Alarcón
Senior Circuit Judge