2015 OK CIV APP 62

**EQ OKLAHOMA, INC.,**
**Plaintiff/Appellee,**

v.

**A CLEAN ENVIRONMENT COMPANY,**
**Defendant/Appellant.**

**No. 112,080.**

Court of Civil Appeals of Oklahoma,
Division No. 2.

June 10, 2015.

Mitchell D. Blackburn, Conner & Winters, LLP, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Leif E. Swedlow, Andrews Davis, P.C., Oklahoma City, Oklahoma, and Tom Sullivent, Sullivent Law Firm, Tulsa, Oklahoma, for Defendant/Appellant.

JERRY L. GOODMAN, Vice–Chief Judge.

¶1 A Clean Environment Company (ACE) appeals the trial court's September 13, 2013, order awarding it and EQ Oklahoma, Inc. (EQ) an attorney's fee. Based upon our review of the record and applicable law, we affirm in part, reverse in part, and remand with instructions.

## FACTS

¶2 EQ and ACE are companies that process hazardous waste materials. In 2010, EQ purchased an industrial solid and hazardous waste treatment, storage, and disposal facility in Tulsa, Oklahoma, from ACE. ACE retained land adjacent and to the east of the facility ("East Property") and a five (5) acre tract adjacent and to the north of the facility (the "Monitored Property"). The East Property was a former Sun Chemical ink plant, approximately 85% of which lies within the 100–year floodplain and 12% within the 500–year floodplain.

¶3 The Oklahoma Department of Environmental Equality (DEQ) regulates the ownership and operation of industrial solid and hazardous waste treatment, storage, and disposal facilities in Oklahoma and requires that each facility have a DEQ-approved storm water management plan.[1] As a condition of EQ's purchase of the facility, DEQ required EQ to test and report the contaminant levels in ground water monitoring wells located on the Monitored Property. Thus, ACE and EQ executed an Amended and Restated Access and Maintenance Easement Agreement on August 19, 2010, granting EQ an access

---

1. All storm water coming into contact with industrial activities must be channelized so it flows through proposed "outfalls" and can be captured and tested for contaminants. During the time ACE owned the facility, storm water from the southern portion of the facility drained through "Outfall No. 3," across the southern portion of the ACE East Property. Storm water from the northern portion of the facility drained through "Outfall No. 1" and "Outfall No. 2" across the northern portion of the ACE East Property and the Monitored Property and then eventually to the Cherry Creek drainage basin.

and maintenance easement to access, maintain, and sample monitoring wells on the Monitored Property. The parties further executed an Amended and Restated Drainage Easement, granting EQ a perpetual easement for the drainage of storm water from the EQ property into, over, and across the Monitored Property. ACE further agreed to not interfere or hinder the flow of storm water from EQ's property into, over, and across the Monitored Property.

¶ 4 ACE subsequently began to develop the East Property, including the addition of rock and soil to increase its elevation and the construction of a building in the immediate drainage path of Outfall No. 3. ACE further temporarily filled Outfall No. 3 with a cement plug and installed a manhole system.[2] The system, however, lacks the capacity to handle a 100–year storm as required by DEQ in order for EQ to obtain a storm water discharge permit. A series of severe rainstorms subsequently occurred, resulting in flooding at the inlet to Outfall No. 3. EQ spent $7,565.58 to store and treat the storm water prior to discharge.

¶ 5 In April of 2011, EQ sued ACE, seeking declaratory and injunctive relief, and damages. EQ further sought a temporary restraining order and injunction, which the trial court granted, enjoining ACE from interfering with EQ's right to: 1) maintain a storm water drainage pattern consistent with that planned or in place at the time EQ purchased the facility; 2) maintain a storm water drainage pattern across the Monitored Property; and 3) ingress and egress on the Monitored Property for remedial and corrective action. The court also enjoined ACE from further construction on the properties which interfered with EQ's rights.

¶ 6 A non-jury trial was held on October 30 through November 2, 2012. On December 12, 2012, the court entered its findings of fact and conclusions of law: 1) recognizing EQ's express and implied drainage easements and its express access and maintenance easement and enjoining ACE from interfering with the

easements; 2) granting EQ access to the East Property for up to one (1) year to fix the drainage property at Outfall No. 3; 3) ordering ACE to remove the manhole system at its own expense; 4) awarding EQ $43,000.00 in damages for consulting an engineer; 5) awarding EQ $75,000.00 in damages for construction costs to cure the drainage issue; and 6) awarding EQ $7,565.58 in damages for storm water containment issues. However, the court found in ACE's favor on EQ's contamination claims.

¶ 7 On January 14, 2014, EQ filed an application for an attorney's fee and costs pursuant to 12 O.S.2011, §§ 940 and 942, seeking $254,415.65 in fees and costs. ACE also submitted an application for fees and costs, seeking $90,315.19 in fees and $10,937.68 in costs. The trial court subsequently awarded EQ fees in the amount of $241,275.00 and costs of $10,160.65. The court awarded ACE fees in the amount of $26,878.22. ACE appeals.

## STANDARD OF REVIEW

¶ 8 The issue of entitlement to an attorney's fee and costs presents purely a legal question which we review *de novo* without deference to the trial court's determination. *Finnell v. Jebco Seismic,* 2003 OK 35, ¶ 7, 67 P.3d 339, 342. The appellate court will exercise its "plenary, independent, and non deferential authority when reexamining a trial court's legal rulings." *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.,* 1996 OK 125, ¶ 4 fn. 1, 932 P.2d 1100, 1103 fn. 1; *Spielmann v. Hayes,* 2000 OK CIV APP 44, ¶ 8, 3 P.3d 711, 713. Once the trial court determines a fee is to be awarded, the amount of that fee is reviewed to determine whether the trial court made a clearly erroneous conclusion and judgment, against reason and evidence, and thus abused its discretion in granting the attorney's fee award. *Broadwater v. Courtney,* 1991 OK 39, ¶ 7, 809 P.2d 1310, 1312.

---

2. The system consists of a concrete manhole that forces the storm water exiting Outfall No. 3 into a 90–degree turn before entering a metal pipe, then two 45–degree elbow turns and a rise in elevation as it heads south where the water exits the pipe and flows back east towards the Cherry Creek basin.

## ANALYSIS

### 1. Award of Fees to EQ

¶ 9 The issue on appeal is whether the trial court erred in awarding EQ an attorney's fee pursuant to 12 O.S.2011, § 940. ACE contends this was legal error as § 940 was inapplicable as a basis for an attorney's fee.

¶ 10 Section 940 provides, in relevant part:

A. In any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorney's fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action.

¶ 11 In Oklahoma, the right of a litigant to recover an attorney's fee is governed by the American Rule. *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 2000 OK 55, ¶ 46, 11 P.3d 162, 179–80; *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 13, 829 P.2d 15, 22. This Rule is firmly established in Oklahoma and provides that courts are without authority to award an attorney's fee in the absence of a specific statute or a contractual provision allowing the recovery of such fees, with certain exceptions. *Barnes*, 2000 OK 55, at 46, 11 P.3d at 180. The Oklahoma Supreme Court has ruled that exceptions to the American Rule are narrowly defined. See *Kay v. Venezuelan Sun Oil Co.*, 1991 OK 16, 806 P.2d 648. Accordingly, this Court strictly construes any authority for fees and costs. *HI–PRO Animal Health v. Halverson*, 2002 OK CIV APP 61, ¶ 7, 48 P.3d 119, 121.

¶ 12 ACE asserts EQ's suit sought an adjudication of an implied easement with a mandatory injunction to force restoration of Outflow No. 3's storm water capacity to its alleged pre-purchase condition and that claims seeking to establish implied easements or to abate nuisance interference with easement rights are not claims concerning "physical injury to property." In addition, ACE contends EQ was only awarded monetary awards for incidental costs, not damages for physical injury to property in the Outflow No. 3 area or otherwise. ACE notes EQ was awarded damages for engineering costs, damages for construction costs to construct drainage works on ACE's property, and damages for storing, testing, and treating storm water and not damages for any physical injury to property. Thus, ACE contends EQ is not entitled to a fee award pursuant to § 940.

¶ 13 EQ disagrees, asserting an easement is property within the meaning of § 940 and that ACE's actions on its own property interfered, obstructed, and frustrated EQ's implied drainage easement at Outfall No. 3. EQ further notes ACE's actions in adding rock and soil to the East Property, constructing a building in the drainage path of Outfall No. 3, temporarily plugging Outfall No. 3 with a concrete plug, and installing an inadequate manhole system resulted in the trial court having to award EQ damages for 1) having to consult an engineer to construct a solution, and 2) for storing, testing, and treating storm water caused by ACE's actions. Thus, EQ contends it sought and obtained damages for the negligent or willful physical injury to property and was properly awarded fees.

¶ 14 "An easement is the right of one person to go onto the land of another and make a limited use thereof." *Head v. McCracken*, 2004 OK 84, ¶ 11, 102 P.3d 670, 676 (citing *Story v. Hefner*, 1975 OK 115, 540 P.2d 562). An easement is a legal property right and is the right to do something on another's land, coupled with an interest or estate in the land affected. *Head*, at 11–12, 102 P.3d at 676–77; *Buttrill v. Stanfield*, 1947 OK 90, 178 P.2d 889. The land benefitted is the dominant tenement and the land burdened by the easement is called the servient tenement. Although a servient owner retains the right to use the land burdened by the easement, the owner may not take any action that unreasonably interferes with the dominant owner's use of the easement.

■ ¶ 15 In the present case, it is undisputed that ACE altered the East Property, including the addition of rock and soil to increase its elevation and the construction of a building in the immediate drainage path of Outfall No. 3. ACE further temporarily filled Outfall No. 3 with a cement plug and installed a manhole system that was inadequate and resulted in flooding at the inlet to Outfall No. 3, thereby interfering with and frustrat-

ing EQ's easement. EQ was awarded, *inter alia*, $75,000.00 in damages for construction costs to repair the drainage issues resulting from ACE's actions. Accordingly, ACE's actions resulted in a change to the servient estate, thereby destroying EQ's easement, causing negligent or willful physical injury to EQ's property right. EQ is therefore entitled to a prevailing party attorney's fee pursuant to § 940.

 ¶ 16 ACE further asserts the award of fees was unreasonable and that the trial court failed to properly apportion non-fee bearing claims. In all cases the amount of fees awarded must be reasonable. *Morgan v. Galilean Health Enter.'s, Inc.*, 1998 OK 130, ¶ 14, 977 P.2d 357, 364. The determination of reasonableness and the amount of the fee awarded are generally left to the sound discretion of the trial court. An award of fees must be reasonable under the particular circumstances and must bear some reasonable relationship to the amount in controversy. *Southwestern Bell Telephone Co. v. Parker Pest Control, Inc.*, 1987 OK 16, 16, 737 P.2d 1186, 1189.

¶ 17 A review of the record on appeal provides the trial court's order does not set forth the formula used to calculate the amount of fees. Thus, the record fails to demonstrate the necessary findings and computations to support the sum awarded as fees.[3] Accordingly, the matter is remanded to the trial court for a determination of the appropriate and reasonable attorney's fee for EQ as prevailing party under § 940 pursuant to this Opinion and *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.

### 2. Award of Fees to ACE

¶ 18 ACE further contends the trial court erred in awarding it $26,878.22 in an attorney's fee. ACE sought fees pursuant to *City Nat'l Bank and Trust Co. v. Owens*, 1977 OK 86, 565 P.2d 4, asserting oppressive litigation tactics.

 ¶ 19 It is well-settled that an attorney's fee is not recoverable in the absence of a statute or enforceable contract provision expressly authorizing the recovery. *Wallace v. Halliburton Co.*, 1993 OK 24, ¶ 19, 850 P.2d 1056, 1061. A very narrow exception to this rule has been recognized in *Owens*, 1977 OK 86, 565 P.2d 4. That exception occurs when a party or party's attorney acts in bad faith, vexatiously, wantonly, or in an oppressive manner. In such a situation, the trial court may, under its inherent authority, grant an attorney's fee against the party for bad faith litigation conduct. *Pioneer Equipment Rental, LLC v. W.S. Bowlware Const., Inc.*, 2008 OK CIV APP 32, ¶ 7, 180 P.3d 694, 696 (citing *Owens*, at ¶.15, at 8).

In *Owens*, cited above, the Oklahoma Supreme Court upheld the power of a trial court to award a limited attorney's fee where a party engaged in oppressive litigation conduct. This conduct included dismissing its case without prejudice on the fourth day of trial, after all the evidence

---

3. "The trial court should set forth with specificity the facts, and computation to support his award. While the compensatory fee is not all that difficult a problem on review if the trial court has made findings into the record regarding hours spent and reasonable hourly rates, the value placed on additional factors will be different in each case." *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, ¶ 22, 598 P.2d 659, 663. See also *Spencer v. Oklahoma Gas & Elec. Co.*, 2007 OK 76, 171 P.3d 890 (trial court abused its discretion by not basing fee award on appropriate lodestar). In order to calculate a just, equitable, and fair fee, including the allowable expenses, the trial court must compute, on the record, the lodestar fee. Then, pursuant to *Burk*, the trial court may consider additional factors, as applicable, to arrive at the final fee and allowed expenses that the trial court deems just, equitable, and reasonable. *Atwood v. At-*

*wood*, 2001 OK CIV APP 48, 74, 25 P.3d 936, 951. This process decides whether the lodestar fee will be increased or enhanced. An "upward adjustment of the lodestar amount is permissible only in rare and exceptional cases and the fee applicant bears the additional burden of showing the adjustment is necessary." *State of Okla., ex. rel. Okla. Bar Assoc. v. Weeks*, 1998 OK 83, ¶ 27, 969 P.2d 347, 354. Enhancement is tied, by definition, to the court's award of an attorney's fee as an upward adjustment of the lodestar figure the court calculated. *Peters v. American Income Life Ins. Co.*, 2003 OK CIV APP 62, 69, 77 P.3d 1090, 1102 (citing *Weeks*, 1998 OK 83, at ¶ 21, 969 P.2d at 353). But see *Silver Creek Investments, Inc. v. Whitten Const. Mgmt., Inc.*, 2013 OK CIV APP 49, ¶ 28, 307 P.3d 360, 371 (enhancement of fee inappropriate for prevailing party under 12 O.S.2011, § 939).

and testimony had been introduced, after the parties had rested, and after the court had prepared instructions. The Court noted the fees were not awarded because of any right to recover such fees during the course of litigation. Rather, the Court was "concerned with the court's power to tax as costs, any necessary expenditures including attorney fees, against a party who causes the necessary expenditures to be wasted."

*Pioneer,* at ¶ 8, 180 P.3d at 696. The Court explained it was not dealing with a case in which a prevailing party was seeking an award for the total cost of litigation, only one in which "a party, who may or may not ultimately be the prevailing party, merely seeks to be compensated for necessary expenses wasted because of the oppressive behavior of his opponent." *Id.* (citing *Owens,* at ¶ 14, 565 P.2d at 8).

The *Owens* exception is narrow, should be applied with caution and restraint, and was not intended to grant the trial court a broad equitable authority to award fees. *Wallace,* 1993 OK 24, at ¶ 20, 850 P.2d at 1060–61. That limited authority was not meant to be a means to sanction or punish parties or their attorneys for raising novel theories or espousing unpopular causes that are neither baseless nor frivolous. *Moshe Tal,* 2002 OK 97, ¶ 26, 61 P.3d 234, 247. Furthermore, for an attorney's fee to be awarded under the court's inherent authority, "overriding considerations" must indicate the need for such a recovery. *Id.;*

see also *Owens,* 1977 OK 86, at ¶ 13, 565 P.2d at 8–9 (citations omitted). Finally, there must be a finding of bad faith or oppressive behavior when the trial court seeks to impose an award of fees under its inherent authority. *Walker v. Ferguson,* 2004 OK 81, ¶ 14, 102 P.3d 144, 147.

*Pioneer,* at ¶ 9, 180 P.3d at 696.

■ ¶ 20 In the case before us, the trial court's order does not set forth the formula used to calculate the amount of fees nor the necessary findings required to sustain an award of fees under *Owens.* Thus, the record fails to demonstrate the necessary findings and computations to support the sums awarded as fees. Accordingly, the matter is remanded to the trial court for a determination of the entitlement of ACE to a fee and, if so, the appropriate and reasonable amount of such fee pursuant to this Opinion, *Burk,* 1979 OK 115, 598 P.2d 659, and *Owens,* 1977 OK 86, 565 P.2d 4.

¶ 21 **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

WISEMAN, J., and BARNES, J. (sitting by designation), concur.